**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Noel BARRON–RIVERA,
Defendant–Appellant.**

**No. 90–30161.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Decided Jan. 7, 1991.

---

Hugh M. Spall, Ellensburg, Wash., for defendant-appellant.

Donald E. Kresse, Jr., and Gregory M. Shogren, Asst. U.S. Attys., Yakima, Wash., for plaintiff-appellee.

Before FLETCHER, FARRIS, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Noel Barron–Rivera appeals his convictions for being an illegal alien in possession of a firearm and for being a felon in possession of a firearm on the ground that the government failed to prove beyond a reasonable doubt general criminal intent. Additionally, he appeals from his three concurrent eighteen-month sentences, claiming that the district judge erred in failing both to group all three convictions as a single offense and to reduce by two points his offense level for accepting responsibility for his crimes. Finding no errors, we affirm.

## BACKGROUND

Barron–Rivera, a citizen and national of Mexico, was deported from the United States on April 11, 1989, after his arrest for possession of a firearm. He had previously been convicted of three felonies in Washington. Subsequent to his deportation, Barron–Rivera unlawfully re-entered the United States and was found living in Yakima, Washington on October 19, 1989. During a search of his residence, federal agents discovered a .32 caliber Colt pistol and ammunition under the mattress of Barron–Rivera's bed. He was indicted for (1) being an alien unlawfully in the United States after deportation, in violation of 8 U.S.C. § 1326; (2) being an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5); and, (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Barron–Rivera waived his right to a jury trial and stipulated to nearly all the facts. The forty-seven minute trial focused on the issue of intent. Barron–Rivera argued that the gun was in his wife's residence at the time he re-entered the United States and moved back into that residence. Accepting that contention, the district court, nonetheless, found that Barron–Rivera's possession of the firearm was voluntary because he permitted the firearm to remain in the house after he acquired knowledge of its presence.

Barron–Rivera was found guilty on all three counts, and was sentenced to three concurrent eighteen-month terms and a two-year term of supervised release. Before sentencing, he objected to the probation officer's failure to recommend a two-level reduction for acceptance of responsibility and its recommendation that Barron–Rivera's three offenses be placed into two groupings, as opposed to one, for sentencing purposes. By accepting the probation officer's recommendations, the district court reached a base offense level of eleven, rather than seven for which Barron–Rivera had urged.

1. The court noted that "[e]ven in a crime requiring no specific intent, a defendant may defend

## DISCUSSION

### I. SUFFICIENCY OF EVIDENCE OF KNOWING, VOLUNTARY POSSESSION

■ Barron–Rivera concedes that neither § 922(g)(1) nor § 922(g)(5) includes a scienter requirement, but still maintains that the government must prove general intent. The government does not quarrel with this contention. Barron–Rivera argues that the government could not have proved general intent because he did not knowingly or voluntarily possess the firearm which was found underneath his mattress. Barron–Rivera's theory is that because the gun was present at his residence prior to his arrival, he cannot be charged with knowing and voluntary possession. For this proposition, he cites *Pena–Cabanillas v. United States*, 394 F.2d 785 (9th Cir.1968), which holds that, while the statute prohibiting illegal entry into the country does not require a showing of specific intent (i.e., "government need not prove that appellant knew he was not entitled to enter the country without the permission of the Attorney General," *id.* at 790), general intent must still be proven.[1] There, the burden was satisfied because no evidence pointed to other than voluntary entry into the United States.

Consistent with the reasoning of *Pena–Cabanillas*, here the district judge found that, by failing to dispose of the gun once he learned of its presence, Barron–Rivera had the requisite general intent:

> [I]t seems to the Court that at such a point in time as he arrived back here to get his wife and family to move and knew that the gun was in the house and permitted it to remain there after that knowledge, that he is with sufficient general intent to be in knowing possession....

In other words, by continuing to reside in the apartment in which the gun was located, he voluntarily and knowingly possessed the gun.

upon the ground that he did no voluntary act...." *Pena–Cabanillas*, 394 F.2d at 788 n. 2.

The requisite showing of possession may be made by proof of actual or constructive possession. In *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir.1989) (citations omitted), this court acknowledged that constructive possession may be shown by evidence of " 'ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed.' " Here, Barron–Rivera conceded ownership of the gun. That alone is a sufficient indicium of constructive possession. Moreover, he lived in the bedroom in which the gun was found, and even directed the agents to the room in which it was kept.

We review the sufficiency of evidence on an element of the crime by asking whether, "after viewing the evidence in the light most favorable to the [government], *any* rational trier of *fact* could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Because Barron–Rivera owned the gun, lived in the apartment in which it was found, and knew where it was kept, a rational fact-finder could conclude that the element of knowing possession was met beyond a reasonable doubt.[2] Therefore, the trial judge, as fact-finder, did not err.

## II.  SENTENCING ISSUES

### A.  *Acceptance of Responsibility*

Barron–Rivera contends that he was entitled to a two-point reduction in offense level for accepting responsibility for his crimes. The district court's refusal to grant the reduction was based upon its determination that Barron–Rivera had not accepted responsibility. We review that determination for clear error. *United States v. Gonzales*, 897 F.2d 1018, 1019 (9th Cir.1990). *See also* United States Sentencing Commission, *Guidelines Manual*, § 3E1.1, Application Note 5 (Nov., 1989) (because of its unique position, the sentencing court's determination of this issue is entitled to great deference).

U.S.S.G. § 3E1.1 governs reductions for acceptance of responsibility: "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." U.S.S.G. § 3E1.1(a). The Guidelines specifically acknowledge that a defendant whose guilt has been determined by a court or jury is not precluded from receiving such a reduction. U.S.S.G. § 3E1.1(b).

Because Barron–Rivera contends that the district court erred in finding him guilty of unlawful possession of a firearm, the government argues he cannot claim entitlement to a sentence reduction for accepting responsibility. It is the government's position that "[o]ne cannot accept responsibility for the crime committed and in the same breath deny that all elements necessary to the crime were fulfilled."

Barron–Rivera says he only went to trial because, as a result of his attorney's candor with the court, pursuant to which the judge learned of a possible meritorious defense, he was prohibited from entering a guilty plea.[3] He emphasizes the Guidelines' commentary that

---

2.  Barron–Rivera argues that the guilty verdict must be reversed because he could not have disposed of the gun without exerting dominion and control over it, which would have made him criminally liable under § 922(g)(1) & (5). Such reasoning would require, for example, a homeowner in whose house illegal drugs were being used to acquiesce to their use for fear that if he ordered their removal he would be guilty of possession for having exercised dominion and control. Moreover, even if he were correct, he was free to live elsewhere, at least until the gun was removed.

3.  The government maintains that, even if Barron–Rivera had been allowed to plead guilty, a request for reduction would have likely been denied because the *Alford*-type plea he sought to enter is one in which a defendant pleads guilty without admitting guilt. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). While such a plea would not have automatically disqualified him for a reduction, "the qualifications a defendant states in his guilty plea may be evidence that he has not fully recognized and accepted personal responsibility for the crime." *United States v. Rodriguez*, 905 F.2d 372, 374 (11th Cir.1990).

    Barron–Rivera argues that his plea would not have been the typical *Alford* plea. Although he fails to explain what would have made it atypi-

[c]onviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

U.S.S.G. § 3E1.1, Application Note 2. By negative implication, the note suggests that where factual guilt is contested the defendant has not accepted responsibility. Notwithstanding that Barron–Rivera seeks to characterize the issue in his trial as a legal question of whether the criminal statute applied to him, the central issue was over the element of general criminal intent—a factual matter.

In deciding against granting a reduction for acceptance of responsibility, the district judge commented

[T]hat you have been here for some time and made no effort—no apparent effort—to return to Mexico. You deny that the firearm in question was at your residence, even when it was found under the mattress of your bed. You told parole officer Tovar that you didn't know it was illegal to possess a firearm, yet you were convicted of being a felon in possession of a firearm in Yakima County in 1988.

. . . .

Finally, the Court notes on that point that your offer to plea was in the form of an Alford plea—a plea without any admission of guilt—which this Court rejected. . . .

So, for all those reasons, I feel that it is appropriate to deny your effort to gain a two-level reduction under § 3E1.1.

Barron–Rivera contests the district court's finding that he denied that the firearm was at his residence. Without relying on that disputed fact, we conclude that the district court's determination that Barron–Rivera did not accept responsibility is not clearly erroneous. We further find that there is

cal, it appears he relies on the fact that he

no likelihood that the district court would have found otherwise even if it had not depended on Barron–Rivera's denial that the firearm was at his residence.

**B. Grouping Closely–Related Offenses**

1. Jurisdiction

■ The government believes the court lacks jurisdiction to entertain Barron–Rivera's challenge to the district court's failure to group all three offenses into a single, combined offense category. We reject this argument as it is based upon a faulty reading of *United States v. Pelayo–Bautista,* 907 F.2d 99 (9th Cir.1990).

In *Pelayo–Bautista,* this court found that it lacked jurisdiction to hear a sentencing challenge regarding a sentence within the applicable guideline range. As federal courts are courts of limited jurisdiction, it is axiomatic that they are " 'limited to those subjects encompassed within [a] statutory grant of jurisdiction.' " *Id.* at 100 (citations omitted). Jurisdiction is conferred upon appeals from sentencing under the guidelines by 18 U.S.C. § 3742(a)(1988). That grant allows for an appeal only where the sentence: "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range ...; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." *Id.* Because both parties agreed on the relevant guideline range (defendants merely challenged where, within the range, they were sentenced) in *Pelayo–Bautista,* there was no basis for jurisdiction under § 3742(a).

Here, on the other hand, the parties plainly disagree on the relevant range. The government contends that, because the district court properly grouped the convictions into two groups, the range is eighteen to twenty-four months. Barron–Rivera, however, argues that the court should have grouped all three convictions into a single, combined offense level resulting in a sen-

conceded all but one element, intent.

tencing range of twelve to eighteen months. Therefore, we have jurisdiction under 18 U.S.C. § 3742(a)(2) to entertain Barron–Rivera's claims because he alleges that the sentence was "imposed as a result of an incorrect application of the sentencing guidelines."

### 2. Challenge to Court's Grouping

The district court grouped Barron–Rivera's two firearm possession charges into one offense group, and treated the conviction for being an illegal alien in the United States after deportation as a separate offense category. Barron–Rivera objected to this grouping prior to sentencing. On appeal, he contends that the district court erred in failing to lump all three convictions into one offense category thereby reducing his total offense level from eleven to nine. First, he claims that U.S.S.G. § 3D1.2(c) requires such a grouping. Alternatively, he claims that U.S.S.G. § 3D1.2(a) requires the same result.

U.S.S.G. § 3D1.2 requires the district court to group closely-related counts into a single "combined" offense level. U.S.S.G. Ch. 3, Pt. D, intro. comment. Closely-related counts are those "involving substantially the same harm." Counts involve substantially the same harm "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c).

Barron–Rivera argues that because being an illegal alien after deportation (8 U.S.C. § 1326) and being an illegal alien in possession of a firearm (18 U.S.C. § 922(g)(5)) both include the specific offense characteristic of being an illegal alien, they must be grouped. Then, he argues that his conviction for being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)) must be added to the newly-created group because one offense within the newly-created offense category involves the same specific offense characteristic as the § 922(g)(1) conviction—firearm possession by a member of a proscribed category.

As the government correctly characterizes it, this is a classic case of bootstrapping.

One of the purposes of § 3D1.2(c) is to combine like offenses so as to "prevent multiple punishment for substantially identical offense conduct." U.S.S.G. Ch. 3, Pt. D, intro. comment. Barron–Rivera's theory of grouping distorts that aim by combining dissimilar offenses to reduce punishment. Under the Guidelines all three offenses could only be properly lumped together if *each* involved substantially the same harm.

Moreover, specific offense characteristics are types of misconduct that "typically occur in the course of the offense for which the defendant was convicted and that aggravate the offense...." *United States v. Kim*, 896 F.2d 678, 682 (2d Cir.1990). As unlawful entry into the country after deportation does not embody types of misconduct which 'typically occur in the course of' unlawful possession of firearms, all three counts cannot be grouped together. Because being an illegal alien in the United States after deportation shares no common specific offense characteristic with being a felon in possession of a firearm, these offenses cannot be combined under § 3D1.2(c). Therefore, the district judge did not err in combining the two possession charges and segregating the deportation offense.

In the alternative, Barron–Rivera makes the same grouping argument relying on § 3D1.2(a). Under that subsection, counts involve substantially the same harm "[w]hen [they] involve the same victim and the same act or transaction." U.S.S.G. § 3D1.2(a).

Once again, however, Barron–Rivera's grouping argument can be easily dismissed. He contends that all three must be grouped together because Counts 1 and 2 both involve the same act—being an illegal alien—and because Counts 2 and 3 involve the same act—unlawful possession of a firearm. Just as above, the result of his bootstrapping is to combine two dissimilar offenses: being an illegal alien in the United States after deportation and being a felon in possession of a firearm.

Focusing on whether the three offenses involve the same victim yields the same result. As each offense was a "victimless"

crime, "the grouping decision must be based primarily upon the nature of the interest invaded by each offense." U.S. S.G. § 3D1.2, Application Note 2. Thus, the offenses should not be grouped if they pose threats to distinct and separate societal interests. *See, e.g., United States v. Egson,* 897 F.2d 353, 354 (8th Cir.1990) (distribution of cocaine charge protects interest in drug abuse prevention while illegal acquisition of food stamps charge protects interest in reduction of fraud and abuse in the food stamp program). Here, they do. Section 922(g) protects society against those determined unqualified to possess firearms, *United States v. Wallace,* 889 F.2d 580, 583 (5th Cir.1989) (citing H.R.Rep. No. 495, 99th Cong., 2d Sess. 23 (1986)), *cert. denied* — U.S. ——, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990), while 8 U.S.C. § 1326 is designed to effectively enforce the immigration laws, *United States v. Mendoza–Lopez,* 781 F.2d 111, 113–14 (8th Cir.1985) (Fagg, J., dissenting), *aff'd,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Therefore, the district court properly refused to combine all three convictions into a single offense category.

## CONCLUSION

Finding no errors in the determination of guilt or in the sentencing, we affirm.