UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerry Ross CASTERLINE,
Defendant–Appellant.

No. 96–30033.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1996.

Decided Dec. 24, 1996.

Steven T. Wax, Federal Public Defender, Portland, OR, for defendant-appellant.

Frank Noonan, Assistant United States Attorney, Portland, OR, for plaintiff-appellee.

Before: CANBY, RYMER, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Though defendant raises several issues, the most significant is whether a felon can be convicted of possessing a firearm based solely on ownership. The answer is no.

A jury convicted Casterline of three counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g). Count I charged possession of a set of derringer pistols, while Counts II and III charged possession of Remington rifles. Casterline argues (1) the connection between the guns and interstate commerce was too attenuated to provide a basis for federal jurisdiction; (2) the indictment improperly alleged the offense occurred "on or before" the relevant date; (3) the evidence was insufficient to prove the crime charged in Count I; (4) the sentencing guidelines were incorrectly applied. We lay out the relevant facts as needed.

## I. Constitutionality.

The evidence established that the guns must have traveled in interstate commerce at some time, but as is usual in felon-in-possession cases, there was no evidence to show when the guns had last crossed state lines. However, the derringers and rifles were manufactured in Connecticut and New York, and found in Oregon, so they had to have travelled in interstate commerce at some time, although that may have been decades in the past.

Casterline requested jury instructions requiring "not only that the firearms at issue at one time traveled in interstate commerce but also that such travel had a substantial effect on interstate commerce," and instructing that "the passage of time may so dilute that effect that a criminal conviction is not warranted." The judge denied these requests. She instructed the jury that the government need prove only that the firearms "had previously been transported in interstate or foreign commerce," and that such travel "at one time" would suffice.

Casterline argues that the statute should be construed as requiring a time of transportation reasonably close to the charged time of possession. He contrasts the language in the felon-in-possession statute, "has been shipped or transported in interstate or foreign commerce," 18 U.S.C. § 922(g), with the obliterated serial numbers statute, "has, *at any time*, been shipped or transported in interstate or foreign commerce," in 18 U.S.C. § 922(k). He also argues that for the statute to be constitutional, a more substantial connection with interstate commerce must be required than transportation across state lines decades before and without any connection to the charged crime. *See United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *United States v. Pappadopoulos,* 64 F.3d 522, 527 (9th Cir.1995).

While there is an argument that the guns need to have moved in interstate commerce "recently," and that interstate movement does not give Congress regulatory power over an item for an "eternity," *see Lopez,* —— U.S. at ——, 115 S.Ct. at 1634 ("*recently* moved in interstate commerce") and *Pappadopoulos,* 64 F.3d at 527 ("Congress's power to regulate articles or goods in commerce may not permit it to regulate an item for *eternity* simply because it has once passed state lines"), our authority is to the contrary. We have said, after *Lopez* came down, that 18 U.S.C. § 922(g) requires only that the firearm was "at some time" in interstate commerce. *United States v. Hanna,* 55 F.3d 1456, 1462 n. 2 (9th Cir.1995) (quoting *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977)).

## II. The Indictment.

Most indictments, and Counts II and III in this case, charge that the crime occurred "on

or about" a specified date. But Count I charged possession of two derringers "on or before" November 14. Casterline was in prison on that date, and had been for seven months. Casterline argues that the wording of the indictment was inappropriate in this case, because he could not tell whether he had to defend his conduct only for the period reasonably near to November 14, or also for the period more than seven months before, when he may have had access to the guns.

The district judge instructed the jury that the government had to prove possession on a date "reasonably near" to the date specified in the indictment:

> The indictment charges that the offenses alleged were committed on or about *or on or before* a certain date. Although it is necessary for the Government to prove beyond a reasonable doubt that the offense was committed *on a date reasonably near the date alleged* in each count of the indictment, it is not necessary for the Government to prove that the offense was committed precisely on the date charged.

(emphasis added). The jury instruction establishes that Casterline was convicted of possessing the derringers "on a date reasonably near" November 14. This instruction takes Casterline's conduct seven months before November 14 out of the case. Because we hold below that the evidence was insufficient to establish possession on a date reasonably near November 14, we need not decide whether Casterline's challenge to the language of the indictment has merit.

### III. Sufficiency of Evidence.

The evidence established without contradiction what Casterline's relationship to the guns listed in Count I was on all dates reasonably near November 14. Casterline was in prison. The guns were in a sheriff's department evidence locker. Imagine Casterline calling the sheriff from prison and asking a deputy to bring him his guns. Casterline had title to the guns, but the sheriff's office had exclusive physical possession and control. At all times reasonably near November 14, Casterline was locked up in one place, the derringers in another, both under government control.

The prosecution apparently used the November 14 date in Count I of the indictment because Casterline sent his uncle a letter on that date, telling him to send a copy of the sheriff's receipt for his guns, and accusing him of lying to the police and keeping one or more guns (the guns Casterline accused his uncle of keeping are not the subject of indictment). The receipt from the Tillamook County Sheriff showed that the two derringers charged in Count I were delivered to the police six months before the date in Count I, on May 12, 1994.

Casterline argues that the evidence was insufficient as a matter of law to establish possession reasonably near to November 14, 1994. The government argues that evidence of ownership alone is sufficient to demonstrate possession, based on *United States v. Barron–Rivera*, 922 F.2d 549 (9th Cir. 1991), and *United States v. Frushon*, 10 F.3d 663 (9th Cir.1993).

*Barron–Rivera* and *Frushon* say that ownership is "a sufficient indicium of constructive possession," *Barron–Rivera*, 922 F.2d at 552, and that from ownership "the jury could properly infer that he possessed the weapons," *Frushon*, 10 F.3d at 665. In those, but not all, cases, a jury could have inferred constructive possession from ownership. In both cases, ownership was circumstantial evidence of who, among at least two individuals with access, possessed the gun. In the case at bar, by contrast, the government proposes to equate ownership with possession, where both the owner and the guns were in custody. Ownership may be circumstantial evidence of possession, but it cannot amount to, or substitute for, possession. Possession, actual or constructive, is what the government must prove.

The statute does not criminalize ownership of guns by felons. It criminalizes possession:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year,
>
> . . . .
>
> to ship or transport in interstate or foreign commerce, or *possess* in or affecting commerce, any firearm or ammunition; or to

receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922 (emphasis added). The verbs used in this statute to denote the criminal conduct are "ship," "transport," "possess," and "receive." Congress did not say "own or possess."

The word "possess" does not mean "own or possess." We indicated as much in *United States v. Seifuddin*, 820 F.2d 1074 (9th Cir. 1987), where we considered the question whether convicted felons had standing to challenge confiscation of their guns pursuant to forfeiture proceedings. We said that ownership does not necessarily amount to possession:

> The illegal act is possession of the firearms *by the defendants*. The defendants therefore could hold a property interest in the forfeited property without that interest being possessory.

*Id.* at 1079.

■ Possession may be constructive for purposes of section 924(g), as in *United States v. Shirley*, 884 F.2d 1130 (9th Cir. 1989). There the defendant had another person put the guns in the trunk of a car and the keys in the ashtray, and park the car in a place she knew about. Though she did not put her hands on the guns, she exercised dominion and control over them. But Casterline could not exercise any dominion or control over the derringers while the government had him and the guns separately locked up.

The felon-in-possession statute is prophylactic, intended "to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *Scarborough v. United States*, 431 U.S. 563, 572, 97 S.Ct. 1963, 1968, 52 L.Ed.2d 582 (1977). Ownership without physical access to, or dominion and control over, the firearm does not constitute possession. If the felon owns a firearm, but does not actually possess or have dominion and control over it, then he does not possess the firearm for purposes of 18 U.S.C. § 922(g). If ownership were equated with possession, then one charged with a first felony, who had pawned his guns or

otherwise put them out of his possession and control, but retained title, would automatically commit a second felony the moment he was adjudged guilty.

Had there been evidence from which any reasonable jury could have inferred Casterline's access to the derringers on a date reasonably near November 14, the jury instruction would have saved the conviction. The judge instructed the jury that Casterline had to have "physical control" or "the power and intent to control" the derringers. But with Casterline locked up by the state, and guns by the sheriff, no reasonable jury could so conclude.

## IV. Sentence.

■ Resentencing will be necessary because we vacate the conviction on Count I for insufficiency of evidence, but some of the sentencing issues Casterline raises are not moot and are likely to recur. Casterline argues that he should have received a two level reduction of his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1. He argues that he went to trial just to test the *Lopez* interstate commerce issue, so this was one of the "rare situations [in which] a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial." U.S.S.G. § 3E1.1 application n. 2.

Casterline's able counsel may have seen that as the purpose of trial, but the evidence did not establish that Casterline himself had manifested acceptance of responsibility in any way, subject to litigation of the *Lopez* issue or not. His presentence report portrayed him as a man strikingly unwilling to accept responsibility for his conduct, and he did nothing to show the contrary. His postconviction letter to the judge saying he was sorry is "something, but not much." *United States v. Vance*, 62 F.3d 1152, 1160 (9th Cir.1995). Our review of 3E1.1 determinations is deferential. U.S.S.G. § 3E1.1 application n. 5 ("great deference on review"). The trial judge was within her discretion in deciding that Casterline did not manifest acceptance of responsibility.

**80**

■ Casterline also argues that his offense level should not have been raised by three for an offense which "involved" eight to twelve firearms, under U.S.S.G. § 2K2.1(b)(1)(C). The presentence report found that Casterline had possessed more weapons than those designated in the indictment. Evidently a number of these guns were kept in an open unlocked cabinet at Casterline's uncle's house, to which he had ready access when he lived there between imprisonments. There were other guns as well to which Casterline may have had ready access. Recalculation of the number of firearms involved, after subtracting those which Casterline merely owned and did not actually or constructively possess, should be left in the first instance to the district court.

■ Casterline also challenges the district judge's use of hearsay to determine how many guns he possessed while he was out of prison. The district judge was within her discretion in the use of hearsay evidence in sentencing. *United States v. Sustaita*, 1 F.3d 950, 952 (9th Cir.1993).

### Conclusion

Casterline's conviction on Count I is REVERSED. The case is REMANDED for resentencing on the remaining counts.