**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John Raymond FISHER, Defendant–Appellant,**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John Raymond FISHER, Defendant–Appellant.**

Nos. 96–30162, 96–30278.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 1997.

Decided March 6, 1998.

George G. Curtis, Portland, Oregon, for appellant.

Leslie K. Baker, Assistant United States Attorney, Portland, Oregon, for appellee.

Before: CANBY, T. G. NELSON and KLEINFELD, Circuit Judges.

Opinion by Judge CANBY; Partial Concurrence and Partial Dissent by Judge KLEINFELD.

CANBY, Circuit Judge:

John Raymond Fisher appeals his jury conviction and resulting sentence for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g) (1994). He also appeals his separate jury convictions and resulting sentences for contempt of court and failure to appear, violations of 18 U.S.C. §§ 401 and 3146 (1994), respectively. The two appeals have been consolidated. We affirm the conviction and sentence for gun possession, and the conviction for contempt of court. We reverse the conviction for failure to appear. We vacate Fisher's sentence for contempt of court and remand to the district court for resentencing.

## INTRODUCTION

Fisher is a convicted felon. During September 1994, Fisher and two other persons were renting a two-bedroom residence on 74th Avenue in Portland, Oregon. A magistrate issued a warrant to search the residence on the basis of a police affidavit. When law enforcement officers executed the search warrant, they discovered six loaded firearms.

A federal grand jury indicted Fisher for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g). He was then arrested, and the court released him from custody under conditions. Fisher did not comply with the conditions, and left town without notice.

Fisher's original trial date of May 31, 1995 had been continued to June 27, 1995. When Fisher failed to appear at a scheduled pretrial motions hearing on June 16, the district court vacated the June 27 trial date.

Fisher surrendered to authorities in early July. A federal grand jury indicted him for contempt of court and failure to appear, *see* 18 U.S.C. §§ 401, 3146, and a jury convicted Fisher on both counts. The trial judge sentenced Fisher to two concurrent 33 month prison sentences.

A second jury subsequently convicted Fisher on the gun possession charge. The second trial judge sentenced Fisher to 78 months in prison, to be served consecutively to his two 33 month sentences.

Fisher now raises several challenges to both convictions and to his sentences for contempt and failure to appear. We will set forth the facts in more detail as we discuss each of his contentions.

### I. Failure to Appear

■ Fisher's indictment charged him with failing to appear "for pretrial motions and trial" from on or about May 31, 1995 until June 28, 1995. To prove Fisher guilty of violating § 3146, the government was required to prove beyond a reasonable doubt that Fisher "(1) was released pursuant to that statute, (2) was required to appear in court, (3) knew that he was required to appear, (4) failed to appear as required, and (5) was willful in his failure to appear." *Weaver v. United States,* 37 F.3d 1411, 1413 (9th Cir.1994). Fisher contends that there was insufficient evidence of element (4), because there was never any fixed date on which he was required to appear and did not. We conclude that he is correct.

### a. The May 31 trial date.

■ When Fisher was released after his initial arrest, one of the conditions of his release was that he "appear at all proceedings as required." There is no question that Fisher knew that he was required to appear for his trial scheduled on May 31, 1995. Other conditions of his release required Fisher to maintain contact with pretrial services, to submit to drug testing, and not to change his residence or employment without prior approval of a pretrial services officer. Fisher violated all three of the latter conditions and his pretrial services officer was unable to locate him. A warrant for his arrest was accordingly issued on May 25, 1995.

■ In the meantime, however, on May 16, Fisher's counsel had moved for a continuance because he needed more time to investigate the case and prepare for trial. The court granted the motion on May 22 and set a new trial date of June 27, 1995. It is not clear whether Fisher received notice of the new trial date, but if he did not, the failure is due to his becoming a fugitive. As a consequence, he is charged with knowledge of that date. *See Weaver,* 37 F.3d at 1413. Lack of notice is therefore not the problem with Fisher's conviction.

Fisher could not, however, be convicted of failing to appear for trial "as required" on May 31, when trial had been continued to June 27. He simply was not "required" to appear on May 31.[1]

### b. The June 16 pretrial motions hearing.

■ On June 8, the trial court set a hearing on pretrial motions for June 16. When Fisher did not appear at that hearing, the trial court vacated the June 27 trial date. Fisher can be charged with notice of the June 16 hearing; any failure on his part to receive notice was a consequence of his fugitive status. *See Weaver,* 37 F.3d at 1413–14. The crucial question, however, is whether Fisher was *required* to attend the June 16 hearing. We conclude that nothing in the record indicates that Fisher was required to appear that day.

■ The district court's minute order setting the June 16 hearing date did not require Fisher to attend. The government argues that Fisher was required to attend by Fed. R.Crim.P. 43(a), which states that "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence...." Putting aside for the moment the fact that the Rule appears to be more of a shield for the defendant than a sword for the prosecution, the Rule does not apply in terms to Fisher's pretrial motions hearing. That pretrial hearing was not an arraignment nor did it involve the taking of a plea. We find no authority for considering it a "stage of the trial." Several other circuits have reasoned that, for the purposes of Rule 43, a trial commences when the parties begin jury selection. *See United States v. Krout,* 56 F.3d 643, 645–46 (5th Cir.1995); *United States v. Camacho,* 955 F.2d 950, 952–53 (4th Cir.1992); *Government of the Virgin Islands v. George,* 680 F.2d 13, 15 (3d Cir.1982); *United States v. Miller,* 463 F.2d 600, 603 (1st Cir.1972). Under this state of the au-

---

**1.** In *Weaver,* 37 F.3d at 1413, it was significant that Weaver had not appeared on a vacated trial date because, if he had done so, he would have learned of the correct date. But Weaver was convicted of failing to appear on the actual trial date, not for failing to appear on a vacated date.

thority, we conclude that Fisher was not "required" to attend the pretrial hearing.[2]

The district court undoubtedly expected Fisher to attend the pretrial hearing. The court declined to proceed with the hearing in Fisher's absence. Moreover, when the aborted motions hearing ultimately was held, Fisher testified. Nevertheless, the record does not indicate that defendants are uniformly expected to appear at all kinds of pretrial hearings, and no law requires them to do so. A trial court, however, may order a defendant to attend a pretrial hearing. If the trial court had done so in this case, Fisher's conviction for failure to appear would stand. As it is, however, the conviction cannot be upheld on the basis of Fisher's failure to attend the June 16 hearing.

### c. The June 27 trial date.

■ Because Fisher did not attend the June 16 pretrial motions hearing, which he had not been ordered to attend, the trial judge vacated the June 27 trial date. At that point, Fisher was under no order to appear on any date certain. Indeed, Fisher has been charged with knowledge of dates set in his absence; he well might also be charged with knowledge that his June 27 trial date had been vacated.[3] Even if he is not charged with that knowledge, however, the fact remains that his June 27 trial date had been vacated. There was to be no trial at which he was required to appear on that date. The order vacating the trial date relieved Fisher of a duty to appear on that date, just as it relieved witnesses, jurors and attorneys from their duty to appear. There was accordingly insufficient evidence that Fisher failed to appear "as required" for his trial on June 27. Because there is no other evidence of his

failure to appear when he was required to do so, we reverse his conviction for that offense.

We reach this conclusion with reluctance on at least two accounts. First, the only reason that the June 27 date did not remain fixed was that Fisher had become a fugitive. But fugitive status alone does not establish a refusal to appear as required.[4] Had Fisher's original continuance been from May 31 to a date in July after he turned himself in, he could not have been charged with failure to appear merely because of his intervening absence. When a defendant's trial date is vacated well in advance of its arrival, we decline to hold that he is "required" to appear on that date for purposes of criminal liability under § .3146. There is a manageable certainty about the requirement that, to be convicted, a defendant must be, on a particular date, under compulsion to appear and then must fail to appear. To expand the requirement so that a defendant may be found guilty for failing to appear on a date when he was not in fact required to appear, but would have been required to appear if he had behaved properly, is to ignore the statutory language "as required" and to inject more uncertainty into the criminal process than it can properly bear.

The second reason why our enthusiasm for our result is limited is that the district court's decision on June 16 to vacate the June 27 trial date was eminently sensible. A busy district court can ill afford to block out time for a trial that very likely will not occur. Jurors, witnesses and attorneys will also be greatly inconvenienced if the trial date is retained when it is almost certain the defendant will not appear.

It is possible, however, for a district court to strike a trial date when the defendant is a fugitive, avoid the uncertainty described

---

2. By concluding that Rule 43 does not require a defendant to attend a pretrial hearing, we are not ruling that a trial court may exclude a defendant from a pretrial hearing or any other proceeding. No such issue is before us. We note, however, that a defendant would have a due process right to be present if " 'a fair and just hearing would be thwarted by his absence.' " *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934)).

3. Fisher did not necessarily intend to avoid appearing altogether. He surrendered voluntarily in early July, and asserts that he absconded so that, before he was incarcerated, he could visit his father who was dying of cancer.

4. Fisher's fugitive status was, of course, a violation of his conditions of release, and he does not dispute that he was properly held in contempt for that violation.

above, and still keep fugitives from benefiting from their own willful absence. The court can accomplish these goals by striking the trial date but ordering the defendant to appear on the stricken trial date to establish a new trial schedule or for other appropriate purposes. If the defendant then fails to appear on the date previously set for trial, then the requisite failure to appear "as required" can be easily established in support of a charge under § 3146.

## II. Felon in Possession of a Firearm
### a. Validity of the search.

■ Fisher argues that the district court should have suppressed the evidence seized during the search of his residence because the search warrant was not supported by probable cause. We reject his contention because, at the least, the officers acted in an objectively reasonable belief in the correctness of the magistrate's finding of probable cause. *See United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984).

The affidavit in support of the warrant recited that one Richard Crome and others had operated a methamphetamine manufacturing and distribution enterprise between 1990 and 1993, and possibly for several years before that time. Crome had told an informant that he had previously lived at the 74th Avenue house and had stashed a quarter-pound of methamphetamine there. As late as February 1994, Crome had stored personal property in the 74th Avenue house in which Fisher resided, and at the time of the warrant in September 1994 Crome remained the owner of that house. In light of these facts, "it would be reasonable to seek evidence" relating to Crome's methamphetamine ring at the 74th Avenue house. *See United States v. Taylor,* 716 F.2d 701, 706 (9th Cir.1983).

■ Although the information regarding Crome's activities was old, the officers executing the search could reasonably have believed that it established probable cause. When a police investigation relates to a continuing criminal business, rather than a completed act, courts will permit greater lapses of time between the dates of the activities described in the affidavit and the date of the warrant request. *United States v. Greany,* 929 F.2d 523, 525 (9th Cir.1991). The rationale for this temporal leniency is that criminal entrepreneurs, much like their legitimate counterparts, likely will retain the equipment and capital of their enterprise for a long period of time. *Id.* Thus, evidence of a criminal business operating at a particular location in the not-so-distant past may reasonably give rise to a belief that a search of the location would yield further evidence. *See id.; United States v. Landis,* 726 F.2d 540, 542–43 (9th Cir.1984); *accord United States v. Rowell,* 903 F.2d 899, 903 (2d Cir. 1990). So, at least, the officers reasonably could have believed in relying on the warrant. *See Leon,* 468 U.S. at 926, 104 S.Ct. at 3422.

■ We also reject Fisher's contention that the district court was required to afford him a *Franks* hearing. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To be entitled to such a hearing, Fisher had to make a substantial preliminary showing (1) that the affidavit contained false statements made knowingly or with reckless disregard for their falsity, and (2) that without the false statements the affidavit would not establish probable cause. *Id.* at 155–56, 98 S.Ct. at 2676–77. Fisher did not make such a showing.

Fisher based his demand for a *Franks* hearing primarily on the following alleged irregularities: (1) the affidavit failed to predict that Fisher would testify that one of the police informants was lying; (2) the affidavit did not mention the government's unsuccessful attempt to entice Fisher into admitting drug-related activity at the house; and (3) the government failed to disclose copies of information relating to Crome's indictment, which Fisher needed to contest the accuracy of the search warrant affidavit.

The first two alleged omissions would not have affected the magistrate's determination of probable cause. If the remainder of the facts recited in the affidavit were sufficient to establish probable cause, evidence of Fisher's denial (unsubstantiated at the time by other evidence) would not have led a reasonable magistrate to deny the warrant. Because

inclusion of the two omitted items would not have affected the probable cause determination, no *Franks* hearing was required. *See United States v. Ippolito,* 774 F.2d 1482, 1486 n. 1 (9th Cir.1985).

■ Fisher's claim that the government refused to make information available to him is unsupported in the record. Fisher asked the government to provide copies of all of the reports in its possession relating to indictments obtained for Crome and others as a result of the underlying methamphetamine investigation. The requested documents totalled approximately 2000 pages. Although the government doubted that the requested documents were discoverable, it agreed to allow Fisher's attorney to review the material under supervision. Subsequently, Fisher himself was allowed to view the material. The government refused—with the district court's approval—only to provide Fisher or his counsel with permanent copies of those reports.

■ We review the district court's ruling regarding Fisher's discovery requests under an abuse of discretion standard. *See United States v. de Cruz,* 82 F.3d 856, 866 (9th Cir.1996). The district court limited discovery on the ground that Fisher might use the requested information to retaliate against those individuals who were identified in the reports as cooperating with the government's investigation. The court concluded that Fisher posed a threat to these individuals because Fisher had already threatened to retaliate against Crome for cooperating with the government. Under these circumstances, we conclude that the district court did not act arbitrarily.

We conclude, therefore, that the district court did not err in denying Fisher's motion to suppress the fruits of the search of the 74th Avenue house.

**b. Admissibility of the confessions.**

■ Portland police officer Wayne Baldassare interviewed Fisher at the 74th Avenue house while police executed the search warrant. Fisher admitted that he owned five of the firearms seized at the house. He also confirmed that he knew that he could not legally possess firearms because he was a convicted felon.

Fisher insists that he confessed to owning firearms only because Officer Baldassare promised him that the government would not prosecute him if he cooperated with the police investigation. Officer Baldassare denied ever making such a promise. The district court found Officer Baldassare's testimony more credible. That factual determination was not clearly erroneous. *See United States v. Miller,* 984 F.2d 1028, 1030 (9th Cir.1993) (clear error standard of review).

Fisher also asserts that his confession was involuntary because the police created a coercive atmosphere when they interviewed Fisher and his housemates during the search. He states that Officer Baldassare scuffled with John Crippen (Fisher's housemate) during their interview. As a result, Crippen emerged from the interview with marks on his neck and gasping for air. Thus, Fisher implies that he feared for his safety during his subsequent interview with Officer Baldassare.

■ We review de novo the district court's conclusion regarding voluntariness. *United States v. Andaverde,* 64 F.3d 1305, 1310 (9th Cir.1995). The test for determining whether a confession is voluntary is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Derrick v. Peterson,* 924 F.2d 813, 817 (9th Cir.1990) (internal quotations and citations omitted). Applying that test, we conclude that Fisher's confession was voluntary.

Police assembled Fisher and the two other occupants in the living room, where police read the search warrant aloud and advised the occupants of their *Miranda* rights. Officer Baldassare interviewed separately all three occupants. He repeated the *Miranda* warnings prior to the interviews, and Fisher indicated that he understood his rights. Fisher does not allege that Officer Baldassare harmed or threatened him. Finally, Fisher was calm and courteous to all of the police officers throughout the execution of

the search warrant. In light of this evidence, we agree with the district court that Fisher spoke freely when he admitted to Officer Baldassare that he owned five of the firearms seized during the search.

■ While still at the 74th Avenue house, Fisher repeated his admission to ATF Special Agent Meadows. We conclude that Agent Meadows did not violate *Miranda* by hearing Fisher's confession. Although Agent Meadows did not personally review the *Miranda* rights with Fisher, uncontradicted testimony indicates that police read Fisher his rights twice before he spoke to Agent Meadows. That was sufficient. *See People of Territory of Guam v. Dela Pena,* 72 F.3d 767, 769–70 (9th Cir.1995). The district court did not err in refusing to suppress any of Fisher's statements.

### c. Sufficiency of the evidence.

■ Fisher's challenge to the sufficiency of the evidence that he possessed firearms collapses upon our ruling that his statements were admissible. Moreover, there was evidence from which a jury properly could find that, when the officers entered to search, Fisher had just left a bedroom in which the guns were located. With the evidence viewed in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Fisher possessed the firearms in issue.[5] *See Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

### d. Felon status; restoration of civil rights.

■ The government established that Fisher is a convicted felon by introducing certified judgments of Fisher's previous convictions in California for oral copulation by force and rape, and for being an ex-felon in possession of a firearm. Fisher argues that this evidence was insufficient for conviction under § 922(g) because the government failed to prove that California had not restored his civil rights. A conviction for

which a person has had civil rights restored is not a conviction for the purposes of § 922(g). *United States v. Meeks,* 987 F.2d 575, 577–78 (9th Cir.1993). Fisher, however, presented no evidence to suggest that California has restored his civil rights. Instead, he insists that the government had the burden of proving that California had not restored his civil rights.

■ We find no authority to support Fisher's position. Lack of restoration of rights is not an element of the § 922(g) charge, which required the government to prove only that, at the time Fisher possessed firearms, he had been convicted of a crime punishable by imprisonment for a term of more than one year. The certified judgments of Fisher's two prior felony convictions were sufficient to satisfy the requirements of § 922(g). *United States v. Boyer,* 421 F.2d 842, 842–43 (9th Cir.1970). Moreover, the relevant information is far more accessible to Fisher than to the prosecution. We decline to impose on the government the additional burden that Fisher urges.

### e. Constitutionality of § 922(g).

We reject Fisher's contention that § 922(g) is unconstitutional in light of *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). We have previously rejected that proposition. *See United States v. Hanna,* 55 F.3d 1456, 1462 n. 2 (9th Cir. 1995).

### III. Sentencing Issues

### a. Criminal history score.

■ Fisher asserts that the district court erred in sentencing him on the conviction for felon in possession of a firearm. We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Newland,* 116 F.3d 400, 402 (9th Cir.1997). We conclude that the district court correctly increased Fisher's criminal history score by two points pursuant to U.S.S.G. § 4A1.1(d), which provides for such

---

5. Fisher also argues that the government failed to prove that the weapons were operable. Operability is not an element of the charge of felon in possession of a firearm. *United States v. Goo-*

*dheim,* 686 F.2d 776, 778 (9th Cir.1982). Moreover, there was evidence that the weapons were operable.

an increase "if the defendant committed the instant offense while under any criminal justice sentence, including ... escape status."

The government provided the court with evidence indicating that, at the time Fisher violated § 922(g), California had outstanding a bench warrant for Fisher's arrest because he had failed to report to begin serving a sentence in connection with a previous conviction. The Sentencing Guidelines provide that "[f]or the purposes of § 4A1.1(d) and (e), failure to report for service of a sentence of imprisonment shall be treated as an escape from such sentence." U.S.S.G. § 4A1.2(n) (1996). Therefore, Fisher was under a criminal justice sentence for the purposes of the Sentencing Guidelines.

### b. Computation of sentence

 Fisher notes that the contempt of court indictment charged him with violating several conditions of his release, including failure to report for urinalysis and failure to appear at all proceedings as required. Fisher then complains that the district court erred because it did not explain whether it based the imposition of a 33 month sentence on the former or the latter violation.

In the circumstances of this case, there was no need for the district court to differentiate between the two violations. The Sentencing Guidelines do not provide a general base offense level for contempt of court. Instead, they require district courts to apply the base offense level for the most analogous offense. The most analogous offense will vary depending on the circumstances of a particular case. *See* U.S.S.G. §§ 2J1.1, 2X5.1. Here, the district court applied the base offense level for failure to appear. We agree that failure to appear is the most analogous offense in this case, whether the analogy is applied to a failure to report for urinalysis or to a failure to appear at other proceedings. The failure to report for urinalysis is therefore sufficient to support the district court's selection of the base offense level.

### c. Acceptance of responsibility.

 The Sentencing Guidelines provide for a two-point offense level reduction if "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. We review for clear error the district court's decision to deny Fisher an acceptance of responsibility reduction. *See United States v. Thompson*, 80 F.3d 368, 370 (9th Cir.1996).

The transcript of the sentencing hearing indicates that the trial judge denied the two-point reduction because "[Fisher's] defense was a denial of the charges." The trial transcript, however, reveals that Fisher acknowledged his guilt on the contempt of court charge. The prosecutor stated in her closing argument that Fisher's attorney had acknowledged Fisher's guilt on the contempt charge. Moreover, Fisher's attorney explained to the jury in his closing argument that:

> I told you at the beginning of the trial that [Fisher] was guilty of Count I [contempt] and I'll tell you again he is guilty of Count I.... I believe the Government has proved to you that he has violated on the contempt proceeding and I would tell you that Mr. Fisher is not expecting anything but a guilty verdict on it.

Thus, Fisher appears to have accepted responsibility for the contempt charge, despite his plea of not guilty. If the district court had other grounds than the plea of not guilty for denial of the adjustment with regard to the contempt charge, they are not apparent on this record.

Alternatively, the district court may have denied the reduction solely on the ground that Fisher contested the failure to appear charge. Of course, the fact that Fisher contested that charge is no longer a valid reason to deny the reduction because we have now reversed that conviction for insufficiency of the evidence.

Accordingly, we vacate Fisher's sentence for contempt of court and remand for resentencing, at which the district court can reconsider in the light of this opinion its denial of the adjustment for acceptance of responsibility.

## CONCLUSION

We affirm Fisher's conviction and sentence for being a felon in possession of a firearm. We affirm his conviction for contempt of court. We reverse Fisher's conviction for failure to appear. We vacate Fisher's sentence for contempt of court and remand to the district court for resentencing.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR RESENTENCING.**

KLEINFELD, Circuit Judge, concurring in part and dissenting in part:

I concur in all of Judge Canby's excellent opinion except for the portion relating to the acceptance of responsibility adjustment, section III(c). We should not reverse the district court's denial of the adjustment.

The contempt of court and failure to appear sentence computations were grouped. *See United States v. Calozza*, 125 F.3d 687, 689–90 (9th Cir.1997). Thus even though we vacate the failure to appear conviction, the acceptance of responsibility adjustment affects the contempt sentence.

Fisher did not "clearly demonstrate acceptance of responsibility," as U.S.S.G. § 3E1.1(a) requires. He refused to admit anything, jumped bail, pleaded not guilty, went to trial, and was convicted by the jury. Application Note 1 of U.S.S.G. § 3E1.1 lists eight ways to show acceptance of responsibility, such as "truthfully admitting the conduct," "voluntary surrender . . . promptly after the commission of the offense," and "timeliness of the defendant's conduct in manifesting acceptance of responsibility." Fisher did not do any of them. At closing argument, his lawyer conceded that the government had proved its case on the contempt count, but a lawyer's concession at closing argument is entirely different from his client's "truthfully admitting" what he did. The closest Fisher came, ever, to accepting responsibility, was at allocution, when he explained that the reason he had not appeared for trial was that he had broken up with his girlfriend and had learned that his father was going in for cancer surgery. That is too little, too late. *See United States v. Caster-*

*line*, 103 F.3d 76, 79 (9th Cir.1996). One might question whether Fisher expressed acceptance of responsibility, or reasons why he should not be regarded as fully responsible for jumping bail.

There is no mystery about why the district judge denied the adjustment. The judge said he denied it "because the defendant absconded and missed the trial." That is a good reason. Jumping bail is obstruction of justice under U.S.S.G. § 3C1.1, Application Note 3(e), and "ordinarily indicates that a defendant has not accepted responsibility." U.S.S.G. § 3E1.1, Application Note 4.

It is very important evidence of failure to accept responsibility that Fisher pleaded not guilty and went to trial. There was nothing to stop him from pleading guilty on the contempt count, and pleading not guilty on the failure to appear count. But that is not what he did. The acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, Application Note 2. This case is not one of the "rare situations" where a person can get the acceptance of responsibility adjustment despite going to trial, as where a defendant "goes to trial to assert and preserve issues that do not relate to factual guilt." U.S.S.G. § 3E1.1, Application Note 2. The guidelines "came about as close as they could, without penalizing the exercise of constitutional rights, to codifying the percentage" discount traditionally given for pretrial pleas of guilty. *United States v. Vance*, 62 F.3d 1152, 1160 (9th Cir.1995).

The district judge's determination in this regard is "entitled to great deference on review." U.S.S.G. § 3E1.1, Application Note 5. Clear error is needed for reversal. *United States v. Ing*, 70 F.3d 553, 555 (9th Cir.1995). There was none.