# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1515

_____

United States of America,                    *
                                             *
        Appellee,                            *
                                             *
    v.                                       *
                                             *
Gary E. Goodson,                             *
                                             *
        Appellant.                           *

_____

No. 98-1516                        Appeals from the United States
                                  District Court for the
_____                       Northern District of Iowa.

United States of America,                    *
                                             *
        Appellee,                            *
                                             *
    v.                                       *
                                             *
Sharon A. Goodson-Malone,                    *
                                             *
        Appellant.                           *

_____

Submitted:  June 9, 1998

Filed:   September 3, 1998

_____

Before WOLLMAN and MURPHY, Circuit Judges, and KYLE,[1] District Judge.
_____

WOLLMAN, Circuit Judge.

In this consolidated appeal, Gary Goodson appeals from the judgment entered by the district court[2] on his convictions for wire fraud in violation of 18 U.S.C. § 1343 and for making a false statement to a government agency in violation of 18 U.S.C. § 1001. His sister, Sharon Goodson-Malone, appeals from her conviction for making a false statement to a government agency in violation of 18 U.S.C. § 1001. We affirm.

**I.**

This case involves Gary Goodson's receipt of social security disability benefits from May of 1988 to September of 1995. During that time period, Goodson was involved in the operation of a bar in Waterloo, Iowa. Until June of 1993, the bar was known as "Goodie's II."[3] Goodie's II was initially structured as a sole proprietorship and was owned by Sharon Goodson-Malone. In May of 1990, Goodie's II was incorporated. The articles of incorporation listed Willie Goodson, the appellants' father, as president. After a family friend named Shirley Vaughn became involved in the enterprise in June of 1993, the bar's name was changed to "Shirley's Lounge."[4]

_____

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

[3]Goodson and a friend had previously owned an establishment called "Goodie's."

[4]Goodson and Goodson-Malone approached Vaughn in June of 1993, when the bar's liquor license expired. Because Goodson was apparently unable to obtain a liquor license under his own name, Vaughn made application for a license. Vaughn also became an authorized user of the bar's checking account, although the record reveals that Vaughn never wrote a check on the account and had little to do with the

Goodson apparently had no ownership interest in Goodie's II or Shirley's Lounge (hereinafter "the bar" or "the business"). Nevertheless, he began to assume a substantial role in the operation of the business as early as June of 1988. Goodson was an authorized user of the bar's checking account and wrote most of the checks drawn on that account during the bar's operation. Goodson also made the majority of deposits in the bar's checking and savings accounts and publicly held himself out to be the manager of the bar.[5] Furthermore, Goodson was generally the person responsible for receiving deliveries and placing orders with the bar's various vendors.

Individuals are ineligible to receive social security disability benefits if they are engaged in "substantial gainful activity." 20 C.F.R. § 404.1571.[6] In June of 1990, Goodson was contacted by Social Security Administration (SSA) representative Cathy Specht as part of a routine inquiry designed to determine if he was still eligible to receive benefits. At Specht's request, Goodson completed a work activity report. In this report, he indicated that his duties at the bar included general maintenance, bartending, and checking identification at the door. He made no mention of any managerial responsibilities. On October 11, 1990, Specht contacted Goodson again to further inquire about the nature of his work at the bar. Goodson told Specht that he

---

day-to-day operation of the bar. Indeed, Vaughn testified that it was Goodson who ran the business.

[5]In 1989, Goodson testified in an unrelated court proceeding that he ran the bar "most of the time." Moreover, at city council meetings that took place in 1993, Goodson stated that he was the bar's manager.

[6]The regulations define "substantial work activity" generally as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

worked part-time as a general helper when his health allowed it and that he was paid $75 per week.

On October 19, 1990, Specht contacted Goodson-Malone to confirm Goodson's description of his work activity. Goodson-Malone informed Specht that Goodson was paid $75 per week and that his duties consisted of checking identification at the door and providing general help when needed. Based upon her conversations with Goodson and Goodson-Malone, Specht concluded that Goodson was not engaged in substantial gainful activity and was eligible to continue receiving disability payments.

In 1993, the SSA initiated a second inquiry into Goodson's receipt of benefits. The matter was eventually transferred to the Office of the Inspector General (OIG). After an extensive investigation, the OIG concluded that Goodson was acting as the manager of the bar and thus was engaged in substantial gainful activity. The OIG further concluded that Goodson had been so engaged since 1988, that he and Goodson-Malone had willfully misrepresented his role during the 1990 inquiry, and that, as a consequence, Goodson and his family had received $104,664.60 of benefits to which they were not entitled. At Goodson's request, these payments had been directly deposited in his account with the John Deere Community Credit Union.

Goodson was charged with seven counts of wire fraud in violation of 18 U.S.C. § 1343 (counts 1-7) and two counts of making a false statement in violation of 18 U.S.C. § 1001 (counts 8-9). Goodson-Malone was charged with two counts of making a false statement (counts 10-11). Goodson and Goodson-Malone were tried jointly. The jury returned a verdict finding Goodson guilty on counts 1-7 (wire fraud) and count 8 (false statement), and finding Goodson-Malone guilty on count 11 (false statement).[7]

---

[7]The government voluntarily dismissed count 10 before trial. The district court dismissed count 9 at the close of the government's case.

The district court denied Goodson's motions for a new trial and for a judgment of acquittal. Goodson-Malone's motion for a new trial was likewise denied. Goodson was sentenced to sixteen months' imprisonment and three years' supervised release. In addition, he was ordered to pay $3,000 restitution. Goodson-Malone was sentenced to two years' probation and was ordered to pay $9,000 restitution.

On appeal, Goodson contends that: (1) the evidence was insufficient to support his convictions for wire fraud and his conviction for making a false statement; (2) he is entitled to a new trial because of newly discovered evidence; and (3) the district court allowed improper opinion testimony. Goodson-Malone joins in Goodson's second and third contentions and also argues that the district court erred in admitting evidence of Goodson's role in the business after the date of her alleged false statement.

**II.**

We first address Goodson's contention that the evidence is insufficient to support his convictions for wire fraud. In reviewing this claim, we examine the evidence in the light most favorable to the jury's verdict and give the government the benefit of all reasonable inferences. See United States v. Diaz-Diaz, 135 F.3d 572, 577 (8th Cir. 1998). We will reverse "'only if a reasonable jury must have had a reasonable doubt' that the elements of the crime were established." United States v. Carlisle, 118 F.3d 1271, 1273 (8th Cir. 1997), cert. denied, 118 S. Ct. 429 (1997) (quoting United States v. Bordeaux, 84 F.3d 1544, 1548 (8th Cir. 1996)).

To sustain the charge of wire fraud, the government was required to prove that it was reasonably foreseeable to Goodson that interstate wire facilities would be used and that they were in fact used. See United States v. Slaughter, 128 F.3d 623, 628 (8th Cir. 1997). Goodson stipulated that he had authorized the SSA to deposit his benefit payments directly into his account at the John Deere Community Credit Union in Waterloo, Iowa. He further stipulated that such payments were received by electronic

wire transfer from the Federal Reserve Bank in Chicago, Illinois. Nonetheless, Goodson contends that it was not reasonably foreseeable to him that interstate wire facilities would be used to make the transfers.

We disagree. At trial, the government introduced a copy of one of Goodson's account statements. On the line reflecting the manner of deposit for his disability payment, the statement contained the notation "EFT," an abbreviation for "electronic funds transfer." See Government's Exhibit 34. Another notation advised Goodson that "[u]ntil further notice, electronic funds transfers will appear as they did before the October statement." Id. The evidence further demonstrated that in conducting the day-to-day operation of the bar, Goodson was responsible for paying vendors, hiring and paying employees, making contractual arrangements, and helping maintain financial records. In today's technology-oriented environment, electronic money transfers are a common and often indispensable part of ordinary business activities. Cf. United States v. Minkin, 504 F.2d 350, 353 (8th Cir. 1974) (recognizing that the mail system "has come to constitute an instrumentality of general use in ordinary business incidents"). In light of Goodson's business experience and the notations on his bank statement, we conclude that a reasonable jury could have found that the use of interstate wire facilities to make the direct deposits was reasonably foreseeable to him.

## III.

Goodson next contends that the district court erred in denying his motion for a new trial because the evidence was insufficient to support his conviction for making a false statement in violation of 18 U.S.C. § 1001.[8] We review the denial of a motion for

---

[8]18 U.S.C. § 1001 provides, in pertinent part:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

a new trial based on insufficient evidence for a clear and manifest abuse of discretion. See United States v. Cruz, 993 F.2d 164, 167 (8th Cir. 1993); United States v. Brown, 956 F.2d 782, 786 (8th Cir. 1992). "The district court should grant a new trial 'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" Id. (quoting United States v. Lanier, 838 F.2d 281, 284-85 (8th Cir. 1988)). Based upon our review of the record, we are satisfied that the government produced ample evidence to support a finding that Goodson's October 1990 statement to the SSA was a bald, intentional misrepresentation of his work activities. Accordingly, the district court did not abuse its discretion in denying Goodson's motion for a new trial based on insufficient evidence.

## IV.

Goodson and Goodson-Malone each argue that the district court erred in denying their respective motions for a new trial based on newly discovered evidence. To obtain a new trial based on newly discovered evidence, a defendant must demonstrate that:

> (1) the evidence was in fact discovered after trial; (2) the failure to discover the evidence was not attributable to a lack of diligence by the movant; (3) the evidence would not be merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would likely produce an acquittal if a new trial were granted.

---

(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1001 (Supp. 1998).

United States v. Willis, 89 F.3d 1371, 1380 (8th Cir. 1996), cert. denied, 117 S. Ct. 273 (1996).  We review the district court's decision for a clear abuse of discretion.  See United States v. Warren, 140 F.3d 742, 744 (8th Cir. 1998).

The government's theory at trial was that Gary Goodson intentionally misrepresented the fact that he was the bar's manager during the period in question.  To support this theory, the government introduced evidence that Goodson had written 2,836 checks on the bar's account, which represented more than eighty percent of all checks written during that time.  The government also produced evidence that Willie Goodson, who was listed as president of the business after its incorporation in 1990, had never written a check on the bar's account.

Following trial, Goodson and Goodson-Malone discovered eight checks signed by Willie Goodson.  Goodson and Goodson-Malone argue that this evidence compels the grant of a new trial because it calls into question the government's theory that Gary Goodson was chiefly responsible for the management of the bar.  This argument fails for two reasons.  First, copies of every check written on the bar's account were available to Goodson and Goodson-Malone prior to trial.  Thus, they could have discovered the evidence through the exercise of due diligence.  See Willis, 89 F.3d at 1380.  Second, Goodson and Goodson-Malone have failed to demonstrate that "the evidence would likely produce an acquittal if a new trial were granted."  Id.  The fact that Willie Goodson wrote eight checks on the bar's account does little to weaken the force of the government's evidence that Gary Goodson was intimately involved in the operation of the business.  Accordingly, the district court did not abuse its discretion in denying Goodson and Goodson-Malone's motions for a new trial based on newly discovered evidence.

## V.

Goodson and Goodson-Malone also raise two issues with respect to the testimony of Kimberly Griffith. The government called Griffith, an Assistant Black Hawk County Attorney who had previously been involved in the prosecution of several members of the Goodson family, as a rebuttal witness in order to impeach Goodson-Malone's credibility after Goodson-Malone had testified on her own behalf. Griffith testified that, based on her contacts with Goodson-Malone, she was of the opinion that Goodson-Malone was not a truthful person.

Goodson and Goodson-Malone first argue that Griffith's testimony was improper because of Griffith's status as an assistant county attorney. Because Goodson and Goodson-Malone failed to object to this testimony, our review is for plain error only. See United States v. Eagle, 137 F.3d 1011, 1015 (8th Cir. 1998); United States v. Granados, 117 F.3d 1089, 1093 (8th Cir. 1997). Rule 608(a) of the Federal Rules of Evidence governs the admission of character evidence to attack the credibility of a witness. This rule provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Fed. R. Evid. 608(a). As required by Rule 608(a), Griffith testified in the form of opinion and referred only to Goodson-Malone's character for truthfulness or untruthfulness. Moreover, it is well established that "[t]he credibility of a defendant who testifies may be attacked in the same manner as that of any other witness." United States v. McMurray, 20 F.3d 831, 834 (8th Cir. 1994). Thus, the admission of Griffith's opinion testimony did not constitute plain error.

Goodson and Goodson-Malone also contend that evidence of a 1992 confrontation between Goodson-Malone and Griffith constitutes newly discovered evidence necessitating a new trial. The confrontation apparently occurred at the Black Hawk County Courthouse while Griffith was serving as prosecutor in a case involving Goodson-Malone's son, Todd Goodson. Following the confrontation, Goodson-Malone filed a grievance with the Black Hawk County Attorney complaining of Griffith's behavior during the incident. In addition, Goodson-Malone was involved in the circulation of a petition denouncing Griffith's behavior. Goodson and Goodson-Malone argue that this information would have been useful in attacking Griffith's credibility because it demonstrates the potential for bias.

This contention is without merit. Neither Goodson nor Goodson-Malone can legitimately contend that evidence of the 1992 incident is newly discovered. Goodson-Malone was a participant in the confrontation, and Goodson was made aware of the incident during trial. Moreover, Goodson and Goodson-Malone have failed to demonstrate that the evidence would likely produce an acquittal upon retrial. See Willis, 89 F.3d at 1380. Goodson-Malone's attorney inquired generally about the incident during his cross-examination. While his questioning did not reveal the precise nature of the dispute, it was sufficient to apprise the jury of the existence of animus between Griffith and Goodson-Malone. Although in hindsight a more detailed probe into the nature of this animus might have been advisable, it is unlikely that more focused questioning would have produced a contrary result.

## VI.

Finally, Goodson-Malone argues that the district court erred in admitting evidence of Goodson's role in the operation of the bar after October 1990. The district court concluded that although this evidence related to events occurring after Goodson-Malone's statements to the SSA, it was nonetheless relevant to show a continuing pattern and to show that Goodson-Malone knew her statements were false. We will

-10-

not reverse a district court's evidentiary rulings unless they constitute a clear and prejudicial abuse of discretion.  See Pittman v. Frazer, 129 F.3d 983, 989 (8th Cir. 1997). We are satisfied that no such abuse of discretion occurred here.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.