# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 08-3402/3436

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Shane Jowell Anderson, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: June 10, 2009
Filed: July 6, 2009

———————

Before MURPHY, ARNOLD and GRUENDER, Circuit Judges.

———————

GRUENDER, Circuit Judge.

After a jury found Shane Jowell Anderson guilty of six counts of wire fraud in violation of 18 U.S.C. § 1343, one count of making false statements in violation of 18 U.S.C. § 1014, and one count of failure to appear in violation of 18 U.S.C. § 3146, the district court[1] sentenced him to 49 months' imprisonment. Anderson appeals his conviction and sentence, arguing that the evidence presented at trial was insufficient to support the jury's verdict, that the district court abused its discretion by not

———————

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

appointing new counsel, that the district court erred by applying the November 2007 United States Sentencing Guidelines ("U.S.S.G.") manual, and that the district court erred by denying his motion for a downward departure. For the reasons discussed below, we affirm.

## I.    BACKGROUND

In August 2001, Anderson approached AgCountry Farm Credit Services ("AgCountry") to obtain a loan to expand his harvesting business. AgCountry granted Anderson a loan based on its analysis of copies of federal income tax returns that he claimed to have filed for 1998, 1999 and 2000. However, Anderson had not actually filed those tax returns. AgCountry wired the loan proceeds from its branch in Minnesota to Anderson's North Dakota bank account. Using similarly fraudulent copies of federal income tax returns for 2001 and 2002, Anderson also obtained loans from AgCountry in March 2002 and March 2003. He eventually defaulted on the loans.

In September 2006, a federal grand jury indicted Anderson on six counts of wire fraud and one count of making false statements to a farm credit bank. Anderson was eventually located and arrested on May 31, 2007. At Anderson's arraignment, the district court released him from custody pending trial subject to certain conditions, including that he "appear at all proceedings as required" and that he "telephone his [court-appointed] attorney at least twice a week and . . . his pretrial services officer at least once a week." After granting Anderson's continuance motion, the district court issued an order scheduling his trial date for September 4, 2007.

On August 28, 2007, the district court held a status conference to determine Anderson's whereabouts because he had not been in contact with either his pretrial services officer or his attorney. During the conference, Anderson's attorney refused to answer the court's questions regarding Anderson's location, claiming attorney-

client privilege. The court then issued an arrest warrant for Anderson, stating that if he was not arrested or otherwise located by August 31, 2007, the court would dismiss the jury but "leave the trial date so if he shows up we'll figure out where we go at that point." Anderson was not located by August 31, and, therefore, the district court issued an order dismissing the jury and continuing the trial on a day-to-day basis. Anderson did not appear on September 4, 2007, the date that the trial had been scheduled to begin.

Anderson was eventually arrested in Arizona on October 29, 2007. A grand jury returned a second indictment charging with him with failure to appear. On December 17, 2007, Anderson filed a motion to dismiss the second indictment, arguing that he could not have failed to appear for his trial because there was no trial date scheduled after the district court dismissed the jury. The district court denied that motion.

On January 2, 2008, Anderson entered into a written plea agreement with the Government, whereby he pled guilty to one count of wire fraud and one count of making false statements in exchange for the dismissal of the remaining counts of wire fraud and the indictment containing the failure to appear charge. After his change of plea hearing but before his sentencing hearing, Anderson wrote a letter to the district court complaining about his court-appointed counsel, Richard Henderson, and the plea agreement. At a February 1, 2008 hearing to discuss the issues Anderson raised in the letter, Anderson stated that he did not want a new attorney. Accordingly, the district court did not appoint new counsel.

Anderson then sent two additional letters to the district court, again complaining about Henderson but this time proclaiming his innocence as well. The district court held a hearing on the two letters on February 26, 2008. At this hearing, Anderson claimed that he was "backed into" the plea agreement, though he did not blame Henderson. The district court then withdrew Anderson's guilty plea. Anderson did

not express any further dissatisfaction with Henderson, and Henderson stated that he and Anderson had resolved the concerns Anderson mentioned in his letters. Accordingly, the district court again did not appoint new counsel.

On March 11, 2008, Henderson filed an ex parte motion to withdraw as counsel, claiming that Anderson refused to communicate with him. After conducting another hearing, the district court denied that motion. The court concluded that Anderson was responsible for the lack of communication with Henderson and that Anderson was trying to manipulate the judicial system.

The district court joined Anderson's wire fraud and false statements case with his failure to appear case and scheduled the trial for April 28, 2008. After the conclusion of the trial, the jury returned a guilty verdict on all counts.

Before the sentencing hearing, Anderson filed another motion for appointment of new counsel. The district court granted this motion, stating that although "[t]he Court is convinced that [Anderson's] current request for a new attorney is still nothing more than an attempt to manipulate the system[,]" there had been a "complete breakdown of all communication[,] . . . [so] appointment of new counsel is appropriate."

At the sentencing hearing, the district court adopted the Presentence Investigation Report ("PSR") with minor factual changes. The PSR calculated an advisory sentencing guidelines range of 46 to 57 months' imprisonment based on a total offense level of 21 and a criminal history category of III. The district court then sentenced Anderson to 49 months' imprisonment after denying his objection to the use of the November 2007 U.S.S.G. manual and his motion for a downward departure under U.S.S.G. § 4A1.3(b)(1). This appeal followed.

## II.  DISCUSSION

### A.  Sufficiency of the Evidence

Anderson appeals his conviction, first arguing that the evidence presented at trial was insufficient to sustain his convictions for wire fraud and failure to appear. When reviewing the sufficiency of the evidence to sustain a conviction, we "examin[e] the evidence in the light most favorable to the jury verdict and giv[e] the verdict the benefit of all reasonable inferences." *United States v. Foxx*, 544 F.3d 943, 949 (8th Cir. 2008). "The standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly." *United States v. Scott*, 64 F.3d 377, 380 (8th Cir. 1995). Because Anderson "did not move for acquittal at the close of evidence, we review the district court's entry of judgment for plain error." *See United States v. Milam*, 494 F.3d 640, 643 (8th Cir. 2007). "Plain error exists when (1) there is error (2) which is plain and (3) affects substantial rights, and we should only exercise our discretion to correct such error if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* We will find error only if, when viewing the evidence in the light most favorable to the verdict, no reasonable fact-finder could have found Anderson guilty beyond a reasonable doubt. *See United States v. Londondio*, 420 F.3d 777, 786 (8th Cir. 2005).

### 1.  Wire Fraud

To convict a defendant of wire fraud, the Government must prove, beyond a reasonable doubt, that the defendant "[1] voluntarily [participated in] a scheme to defraud another out of money, [2] that he did so with intent to defraud, [3] that it was reasonably foreseeable interstate wire communications would be used, and [4] that interstate wire communications were used." *United States v. Slaughter*, 128 F.3d 623, 628 (8th Cir. 1997). Anderson disputes the sufficiency of the Government's evidence on the third element—the reasonable foreseeability that interstate wire

communications would be used. He contends that although the loan proceeds were transferred interstate from AgCountry's Minnesota branch to his bank in North Dakota, the Government presented no evidence that he should have foreseen such an interstate transfer, as opposed to an intrastate transfer from AgCountry's North Dakota branch to his North Dakota bank.

The Government presented evidence that Anderson used AgCountry's online banking system to receive and transfer money to his bank account. An AgCountry employee testified that upon AgCountry's approval of the loans, Anderson initiated the wire transfers by accessing AgCountry's online customer account and directing the transfer of the loan proceeds to his bank account in North Dakota. The loan proceeds were then wired from AgCountry's branch in Minnesota to Anderson's North Dakota bank account.

In *United States v. Goodson*, 155 F.3d 963 (8th Cir. 1998), we held that interstate wire transfers were reasonably foreseeable to a defendant because his deposit "statement contained the notation 'EFT,' an abbreviation for 'electronic funds transfer,'" *id.* at 966. Similarly, in this case, because the Government presented evidence that Anderson used AgCountry's electronic banking system to transfer the loan proceeds into his account, a reasonable jury could determine that it was reasonably foreseeable to Anderson that the loan proceeds would be transferred interstate by wire. *See id.* at 966-67. Accordingly, because the evidence presented at trial was sufficient to support Anderson's conviction for wire fraud, "the district court committed no error, much less plain error, in failing to sua sponte direct a judgment of acquittal at the close of all the evidence." *See Londondio*, 420 F.3d at 787 (italics omitted).

## 2. Failure to Appear

To convict Anderson of failure to appear, the jury instructions stated that the Government must prove, beyond a reasonable doubt, that "[1] [Anderson] was on pretrial release; [2] [Anderson] was required to be in Court for his scheduled jury trial; [3] [Anderson] was aware of this required appearance; and [4] [Anderson] willfully failed to appear."[2]  *Cf. United States v. Ray*, 768 F.2d 991, 994 (8th Cir. 1985) (observing that notice and willfulness are two essential elements of a failure to appear charge), *overruled on other grounds*, *Henderson v. United States*, 476 U.S. 321, 330 (1986).  Anderson challenges only the sufficiency of the evidence supporting the second element—that he was required to be in court for his scheduled jury trial on September 4, 2007.[3]  He argues that because the district court dismissed the jury and continued the trial on a day-to-day basis, his trial date was no longer set for September 4, 2007, and, therefore, he had no obligation to appear in court.

We conclude that the district court did not err, plainly or otherwise, in failing to sua sponte direct a judgment of acquittal because there was sufficient evidence to support Anderson's conviction for failure to appear.  Although the district court dismissed the jury before the scheduled September 4 trial date, the court did not vacate the actual trial date.  During the status conference in which the court inquired about

---

[2]Section 3146 provides that "[w]hoever, having been released under this chapter[,] . . . knowingly . . . fails to appear before a court as required by the conditions of release," commits the offense of failure to appear.  Anderson's conditions of release required him to "appear at all proceedings as required."  The indictment and jury instructions were more specific, however, charging Anderson with "knowingly fail[ing] to appear for said jury trial as required by conditions of his release."

[3]Anderson also contends in his reply brief that his failure to appear was not willful, a challenge to the fourth element.  However, Anderson did not raise this argument in his opening brief, so it is waived. *See United States v. Barnum*, 564 F.3d 964, 968 n.4 (8th Cir. 2009).

Anderson's whereabouts, the district court specifically stated that it would dismiss the jury but "*leave the trial date* so if [Anderson] shows up we'll figure out where to go at that point." (Emphasis added.) The district court's order did not relieve Anderson of his obligation to appear for trial. Rather, the court explained that it dismissed the jury "for fiscal prudence reasons" but that if Anderson had shown up voluntarily on September 4, the trial would have begun and jury selection would have begun shortly thereafter.

Anderson relies on *United States v. Fisher*, 137 F.3d 1158 (9th Cir. 1998), in support of his argument. *Fisher*, however, is clearly distinguishable from the present case. When Fisher failed to appear for his pretrial hearing, the district court vacated his upcoming trial date. *Id.* at 1163. Accordingly, the Ninth Circuit concluded that there was insufficient evidence that Fisher was required to appear for the vacated trial date. *Id.* at 1162. In this case, the district court did not vacate Anderson's September 4 trial date, meaning that Anderson was not relieved of his obligation to appear. Thus, based on all of the evidence presented at trial, a reasonable jury could conclude that Anderson was required to appear for trial on September 4.

## B.     Requests for New Counsel

Anderson contends that the district court abused its discretion by denying his requests for new counsel and that the court failed to make a thorough inquiry into his dissatisfaction with Henderson following Anderson's letters to the court. "We review denial of a request for new counsel for abuse of discretion." *United States v. Boone*, 437 F.3d 829, 839 (8th Cir. 2006). Anderson "must show justifiable dissatisfaction with" Henderson, which "can arise from irreconcilable conflict, a complete breakdown in communication, or any other factor interfering significantly with an attorney's ability to provide zealous representation." *See id.* However, Anderson cannot establish justifiable dissatisfaction merely by showing that he was frustrated with Henderson's performance or that he disagreed with Henderson's "tactical decisions." *See id.*

-8-

We find that the record does not support Anderson's argument. With respect to Anderson's first letter complaining about Henderson, the court provided Anderson with an opportunity to present his concerns during the February 1 hearing. Anderson told the court that his letter never stated that he wanted new representation and that "[t]here has been some reading between the lines there" when the district court suggested the letter was a motion for new counsel. Given Anderson's statements that he did not want new counsel, we conclude that the district court made an adequate inquiry into Anderson's first complaint, *see United States v. Webster*, 84 F.3d 1056, 1062 n.2 (8th Cir. 1996) (finding that the district court made a satisfactory inquiry into the basis of the defendant's dissatisfaction where the court "granted [the defendant] leave to freely explain the reason for his discontent"), and did not abuse its discretion in finding that Anderson did not carry the burden of showing justifiable dissatisfaction with appointed counsel, *see United States v. Mentzos*, 462 F.3d 830, 839 (8th Cir. 2006) (noting that "the defendant bears the burden of showing justifiable dissatisfaction with appointed counsel").

The district court held another hearing on February 26, 2008, concerning Anderson's next two letters. The district court again questioned Anderson and Henderson about their relationship. Henderson stated that he and Anderson had discussed Anderson's concerns and that they no longer had a disagreement about tactics leading up to sentencing. Anderson spoke only of his problems with the plea agreement, and he did not express further dissatisfaction with Henderson. As a result, the district court withdrew Anderson's guilty plea. Because the district court gave Anderson the opportunity to present his position and Anderson raised no criticisms of Henderson at the hearing, we conclude that the district court made an adequate inquiry into Anderson's concerns, *see Webster*, 84 F.3d at 1062 n.2, and did not abuse its discretion in failing to appoint new counsel after receiving Anderson's second and third letters, *see Mentzos*, 462 F.3d at 839.

Finally, at the hearing concerning Henderson's ex parte motion to withdraw, Henderson told the court that he "[did not] know exactly what the nature of

[Anderson's] problem is" and that he believed Anderson "just does not want to work with [me] as his counsel." Anderson agreed with Henderson's account of their relationship. The district court concluded that "the problem is mostly the failure of [Anderson] to communicate effectively with Mr. Henderson." Accordingly, the court denied the ex parte motion, finding that "the only purpose for this motion from Mr. Anderson's point of view is purposes of delay and to manipulate the court into giving him the lawyer that he wants." As with the other incidents, we conclude that the district court conducted an adequate inquiry into the facts underlying Anderson's complaints at the March 13 hearing, *see Webster*, 84 F.3d at 1062 n.2, and did not abuse its discretion in denying Henderson's ex parte motion because Anderson failed to show that there was a total communication breakdown rather than an unwillingness on Anderson's part to communicate with Henderson, *see United States v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002) (affirming a district court's denial of a defendant's motion for new counsel where "there was no total breakdown in communication, only an unwillingness on [the defendant's] part to communicate with counsel"); *see also United States v. Redd*, 318 F.3d 778, 783 (8th Cir. 2003) (assuming without deciding that a defendant can raise a challenge to the district court's denial of defense counsel's motion to withdraw).[4]

---

[4]Anderson also raises an ineffective assistance of counsel claim on appeal, arguing that Henderson was ineffective by failing to seek appellate review of the district court's decision to detain him before sentencing, failing to contact and sufficiently prepare witnesses before trial, and pressuring him to sign the plea agreement. "In general, an ineffective assistance of counsel claim is not cognizable on direct appeal" because "such a claim is properly raised in a 28 U.S.C. § 2255 action." *United States v. Lewis*, 483 F.3d 871, 873 n.2 (8th Cir. 2007). "We will consider an ineffective assistance of counsel claim on direct appeal only in exceptional cases where the district court has developed a record on the ineffectiveness issue or where the result would otherwise be a plain miscarriage of justice." *Id.* Neither exception applies in this case; therefore, we decline to address Anderson's ineffective assistance claim. *See id.*

## C.  Sentencing Issues

Anderson argues that the district court erred by applying the wrong guidelines manual and by denying his request for a downward departure.  "We review a sentence in two parts:  first we review for significant procedural error, such as an improper calculation of the advisory sentencing guidelines range; and second, absent significant procedural error, we review for substantive reasonableness."  *United States v. Barker*, 556 F.3d 682, 690 (8th Cir. 2009).  "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines de novo."  *Id.*  Application of the wrong guidelines manual would constitute procedural error.  *See id.*

### 1.  Ex Post Facto Clause

Anderson contends that the district court violated the Ex Post Facto Clause of the United States Constitution by applying the November 2007 U.S.S.G. manual to all of the offense conduct.  He claims that the court should have applied the November 2002 U.S.S.G. manual to his convictions for wire fraud because the last act in his wire fraud scheme occurred before the November 2003 U.S.S.G. manual became effective.[5] Using the November 2002 U.S.S.G. manual for the wire fraud offenses would have resulted in an advisory guidelines range of 41 to 51 months' imprisonment, as opposed to the advisory guidelines range of 46 to 57 months' imprisonment that the district court determined after applying the November 2007 U.S.S.G. manual.[6]

_____

[5]Anderson does not contest the district court's use of the November 2007 U.S.S.G. manual for his failure to appear conviction.

[6]The higher advisory guidelines range is a result of an increase in the base offense level for wire fraud offenses from 6 to 7, beginning with the November 2003 U.S.S.G. manual.

The sentencing guidelines direct courts to apply the guidelines manual in effect on the date of sentencing unless doing so would violate the Ex Post Facto Clause, in which case the guidelines manual in effect on the date that the offense of conviction was committed should be used. *See* U.S.S.G. § 1B1.11(a) and (b)(1).[7] However, the so-called "one-book rule requires that the 'Guidelines Manual in effect on a particular date be applied in its entirety.'" *Carter*, 490 F.3d at 643-44 (quoting U.S.S.G. § 1B1.11(b)(2)). "If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. § 1B1.11(b)(3). We have held that the one-book rule does not violate the Ex Post Facto Clause, even when it results in a higher guidelines range, because defendants have "fair warning" that the revised guidelines manual will apply to grouped offenses. *See United States v. Cooper*, 63 F.3d 761, 762 (8th Cir. 1995) (per curiam); *see also United States v. Duane*, 533 F.3d 441, 448-49 (6th Cir. 2008) (noting that "the majority of circuits" have concluded that the one-book rule does not violate the Ex Post Facto Clause and collecting cases).

Anderson's wire fraud offenses continued through 2003. He failed to appear for trial on those charges in September 2007. Pursuant to the one-book rule, because Anderson had been convicted of two offenses, the first—wire fraud—committed before, and the second—failure to appear—committed after, a revised edition of the guidelines manual became effective, the revised edition of the guidelines should be applied. *See* § 1B1.11(b)(3). Pursuant to § 1B1.11(a), the district court should use the guidelines manual in effect on the date Anderson was sentenced, October 16, 2008, unless doing so would violate the Ex Post Facto Clause. Because there is no relevant difference between the guidelines manual in effect on the date Anderson was

---

[7]For purposes of Anderson's appeal, we assume that the Ex Post Facto Clause applies to a district court's application of the sentencing guidelines even after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Carter*, 490 F.3d 641, 643 (8th Cir. 2007).

sentenced, the November 2007 U.S.S.G. manual, and the version in effect on the date the last offense was committed in September 2007, the November 2006 U.S.S.G. manual, there is no additional Ex Post Facto Clause concern with using the November 2007 U.S.S.G. manual. Accordingly, we conclude that the district court properly applied § 1B1.11(b)(3) and § 1B1.11(a) when it used the November 2007 U.S.S.G. manual to sentence Anderson. Therefore, the district court did not commit significant procedural error.

## 2. Downward Departure

Anderson argues that the district court erred by failing to grant a downward departure under U.S.S.G. § 4A1.3(b)(1), claiming that his criminal history category substantially over-represents the seriousness of his criminal history. However, we have no authority to review the district court's denial of Anderson's request for a downward departure because Anderson does not argue that the court had an unconstitutional motive in denying his request and because the court recognized that it had the authority to depart downward. *See United States v. Saddler*, 538 F.3d 879, 889-90 (8th Cir.), *cert. denied*, 555 U.S. ---, 129 S. Ct. 770 (2008).[8]

## III. CONCLUSION

For the foregoing reasons, we affirm Anderson's conviction and sentence.

_____

[8]"After finding that the district court did not commit significant procedural error, as we have here, we would ordinarily review the substantive reasonableness of the district court's sentence." *United States v. Fischer*, 551 F.3d 751, 756 (8th Cir. 2008). But because Anderson "did not provide any argument in his briefs regarding the reasonableness of his sentence, he is deemed to have waived this issue on appeal." *See id.*

-13-