# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-3433

———————

United States of America,

        Appellee,

v.

Noel Andrew Jackson,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Arkansas.
\*
\*     [UNPUBLISHED]
\*

———————

Submitted: February 14, 2011
Filed: July 18, 2011

———————

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

———————

PER CURIAM.

Noel Andrew Jackson pleaded guilty to two counts of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The district court[1] sentenced him to 420 months' imprisonment. On appeal, Jackson argues that the district court procedurally erred at sentencing by denying his request for a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and declining to depart from the career-offender Guideline, U.S.S.G. § 4B1.1. We affirm.

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

## I. *Background*

On February 25, 2009, a grand jury indicted Jackson on two counts of bank robbery, two counts of brandishing a firearm during a crime of violence, and two counts of being a felon in possession of a firearm. Jackson participated in the armed robberies of the First Federal Bank in Rogers, Arkansas, in December 2008 and the Arvest Bank in Springdale, Arkansas, in January 2009.

Jackson initially pleaded not guilty to all six charges in the indictment, and a trial was scheduled to begin on May 19, 2009. On May 19, before the start of proceedings, Jackson entered into a plea agreement with the government. Jackson pleaded guilty to two counts of bank robbery and one count of brandishing a firearm, and the government agreed to dismiss the remaining counts.

The presentence investigation report (PSR) recommended that Jackson not receive a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), explaining:

> The defendant entered guilty pleas to Counts One, Two, and Five of the seven count Indictment on the date his trial was to begin. During his interview with the Probation Officer for this report, Mr. Jackson expressed his guilt of the robbery with a firearm of First Federal Bank (Counts One and Two), stating he knew it was wrong and there was no excuse for his behavior. He further expressed his apologies to the victims and anyone else involved. Mr. Jackson denied his guilt of the Arvest Bank Robbery (Count Five), stating his belief that he could prevail at trial if properly represented. He indicated that he pled guilty because his attorney had given up on him and if he represented himself, he would lose at trial. Jackson concluded by stating that the plea deal was so good he thought he should take it.

The PSR calculated Jackson's total offense level as 34.

In detailing Jackson's criminal history, the PSR included, among other convictions, a 1994 Missouri conviction for second-degree burglary and a 1998 Kentucky conviction for first-degree robbery, when Jackson was 16 and 20 years old, respectively. Based on these convictions, the PSR determined that Jackson qualified for career-offender status and a criminal history category of VI, pursuant to U.S.S.G. § 4B1.1(a) and (b). As a result, pursuant to § 4B1.1(c)(3), the PSR calculated a Guidelines range of 360 months' to life imprisonment.

Jackson objected, claiming that he should have received the two-level reduction for acceptance of responsibility and should not have qualified for career-offender status. At the sentencing hearing, the government presented testimony from Michael Hudson, the probation officer who prepared the PSR. Hudson testified that he based his recommendation against a two-level reduction for acceptance of responsibility on his interview with Jackson. In that interview, according to Hudson, Jackson had denied committing the Arvest Bank robbery. On cross-examination, Jackson's attorney (who was present at the interview) questioned Hudson's recollection of the interview, but Hudson confirmed that Jackson had denied his guilt for the Arvest Bank robbery.

The district court overruled both of Jackson's objections. First, the court found that Jackson satisfied all three requirements for career-offender status under U.S.S.G. § 4B1.1(a) because (1) Jackson was over 18 years old at the time he committed the instant offense; (2) the instant offense was a felony that qualified as a crime of violence; and (3) his 1994 Missouri burglary conviction and 1998 Kentucky robbery convictions qualified as crimes of violence. Second, the court found that Jackson should not be granted a two-level reduction for acceptance of responsibility under § 3E1.1(a). The court explained its reasons for doing so, stating:

> Based upon what Mr. Hudson has said, and it's not been refuted, I think that his report in the investigation report as to what happened in his

conversation with Mr. Jackson, I have no real[] reason to doubt that. . . . I see no reason to think Mr. Hudson has any motive or reason to misrepresent anything to the Court. So I accept Mr. Hudson's version as to what was said.

Moreover, the court found that the timing of Jackson's guilty plea militated against granting the reduction, stating:

In this case, Mr. Jackson staunchly maintained his not guilty pleas up until the actual date of trial. We actually had a jury called. The Government, as far as I know, was locked and loaded, had to call its witnesses and be prepared for trial, and it was only in the face of the jury being present that the defendant then cut a deal and made his plea.

The court considered Jackson's last-minute plea deal to be indicative of something other than genuine acceptance of responsibility. Thus, consistent with the PSR, the court determined that the applicable advisory Guidelines range was 360 months' to life imprisonment. After hearing testimony from a victim and arguments by both parties, the court sentenced Jackson to a total of 420 months' imprisonment.

## II. *Discussion*

On appeal, Jackson argues that the district court procedurally erred by denying his request for a two-level reduction for acceptance of responsibility and declining to depart from the career-offender Guideline.

### A. *Acceptance of Responsibility*

Jackson first argues that the district court erred in refusing to grant a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). He contends that the district court *must* grant the reduction "if a defendant 'clearly demonstrates' acceptance of responsibility for 'his offense.'" Jackson maintains that his statements to Hudson show that he fully accepted responsibility and apologized

for his crimes, including the Arvest Bank robbery. He asserts that his statement about his belief that he could have succeeded at trial with a better attorney did not show that he was denying criminal conduct. Moreover, he argues that "a delay in accepting responsibility should not necessarily result in a denial of the reduction."

The government, in response, avers that the district court did not clearly err in declining to grant the acceptance of responsibility reduction because Jackson failed to meet his burden to show he was entitled to the reduction. The government notes that Jackson, according to Hudson's testimony, maintained his innocence even after entering his guilty plea. Moreover, he waited until the day of his trial to enter his guilty plea. Thus, the court had a sufficient basis for finding that Jackson was not entitled to a reduction for acceptance of responsibility.

"We review a district court's interpretation and application of the Guidelines de novo and its factual findings regarding enhancements for clear error." *United States v. Canania*, 532 F.3d 764, 770 (8th Cir. 2008) (quotation and citation omitted). Specifically, we review for clear error the district court's denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). *Id.* at 772.

"A district court's factual determination of the defendant's entitlement to an offense level decrease for acceptance of responsibility is entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation." *Id.* (quotation and citation omitted). In the district court, Jackson bore the burden "to show that [he] clearly demonstrated acceptance of responsibility." *Id.* (quotation and citation omitted). To determine whether a defendant has satisfied his burden, Application Note 1 to § 3E1.1(a) directs courts to consider, among other things, whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction" and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." Application Note 3 cautions that a defendant is not entitled to the reduction "as a matter of right" simply because he enters a guilty plea.

"The key issue is whether the defendant has shown a recognition and affirmative responsibility for the offense and sincere remorse." *United States v. Wineman*, 625 F.3d 536, 539 (8th Cir. 2010) (quotations and citations omitted).

Here, the district court did not clearly err in denying a two-level reduction for acceptance of responsibility. The evidence showed that Jackson never fully accepted responsibility for the Arvest Bank robbery. In his interview with Hudson, Jackson revealed that he entered the plea not because he acknowledged his guilt but because he lacked confidence in his attorney's trial skills. Although Jackson challenged Hudson's testimony at the sentencing hearing, the court specifically found Hudson's testimony credible; this finding "is quintessentially a judgment call and virtually unassailable on appeal." *United States v. Hart*, 544 F.3d 911, 916 (8th Cir. 2008) (quotations and citations omitted). Jackson now attempts to minimize his statements to Hudson by arguing that he had a "right to maintain his technical innocence." But regardless of whether Jackson believed he did not commit the Arvest robbery or merely believed he could win at trial based on a "technicality," his statements reflected something less than full acceptance of responsibility for the offense. Moreover, the district court properly considered that he delayed pleading guilty until the day of his trial, after the government had prepared for trial. Therefore, the district court did not clearly err in denying Jackson a two-level reduction for acceptance of responsibility.

## B. *Downward Departure*

Jackson also argues that the district court erred by not departing from the career-offender Guideline. He contends that a sentencing court has the discretion to disagree with the Guidelines, especially in an atypical case, such as his, where the career offender Guideline has overstated his criminal history. Although he acknowledges that his 1994 Missouri burglary conviction qualified as a crime of violence, Jackson maintains that the circumstances of that crime—specifically, the fact that "no one was present during the offense, threatened by Jackson, or placed in

any danger"—indicate a much less serious crime. Jackson argues that this fact, combined with Jackson's young age at the time of his 1994 and 1998 convictions, warranted a departure.

This court has no authority to review a district court's denial of a request for a downward departure unless the district court "had an unconstitutional motive in denying his request" or failed to "recognize[] that it had the authority to depart downward." *United States v. Anderson*, 570 F.3d 1025, 1034 (8th Cir. 2009). Jackson has made neither argument on this appeal, and our careful review of the sentencing record reveals no unconstitutional motive or failure to recognize discretionary authority on the part of the district court. Thus, we decline to review the district court's declination to depart downward.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____