# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1839

_____

United States of America

*Plaintiff - Appellee*

v.

Douglas Wayne Tarnow

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 14, 2012
Filed: February 8, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury convicted Douglas Wayne Tarnow of one count of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1151, 1153(a), 2241(a)(1), and 2246(2). Tarnow appeals from his conviction, arguing that the evidence was insufficient to support the verdict. Alternatively, he argues that a new trial should be granted because the

district court[1] admitted prejudicial propensity evidence and erred when it refused to instruct the jury on a lesser included offense. We affirm.

## I. Background

Tarnow and K.D.[2] entered into a romantic relationship in November 2010. In the beginning, Tarnow was "nice and respectful" towards K.D. But he soon became jealous and often accused K.D. of being unfaithful. Tarnow ended their relationship on January 25, 2011, when he told K.D. that he did not want to see her again. They began exchanging text messages a few days later and discussed getting back together. Some of the messages were sexually explicit. On January 30, K.D. met Tarnow at his aunt's house to retrieve her personal effects.

When K.D. arrived, Tarnow entered the back seat of her car and began berating her. Tarnow asked for a ride, but could not find a place to go. Tarnow told K.D. to take him to her house, from where he would find a further ride. K.D. drove to her home, located in a rural area on the Red Lake Indian Reservation, and went inside. Tarnow remained outside, using his cell phone. He entered K.D.'s home a few minutes later.

According to K.D., Tarnow was angry:

> [H]e kept asking me if there was something I had to tell him and . . . I kept telling him no. He would ask me is there something that I did over the past week that I need to tell him and I told him no. And he kept repeating or asking me those questions over and over.

---

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

[2]Although the victim of this offense is not a minor, we have elected to identify her by use of initials rather than by her full name.

Tarnow then went behind K.D. and wrapped his arms around her, squeezing her rib cage so tightly that she thought her ribs might break. "I felt like I was getting crushed." Tarnow then slammed K.D. onto her bed, repeatedly asking her if there was something she needed to tell him. K.D. responded that there was not.

K.D. asked Tarnow to leave and offered him money. Tarnow refused to leave, saying (although not in such refined terms) that he was sexually aroused and demanding that K.D. perform oral sex on him. After Tarnow ripped off her tank top and bra, K.D. complied with Tarnow's demand, explaining at trial that "I didn't want the terrorizing to continue. I was scared. I just did as I was told because I wanted everything to stop." Afterwards, Tarnow lay on K.D.'s bed, pulling her against his chest. K.D. testified that she could not move, so she remained in bed with him. Tarnow told K.D. "not to touch the phone." Fearful of Tarnow, K.D. did not call the police and did not activate her home security system.

The next morning, K.D. got up to go to work. Tarnow kept a watchful eye on her and again ordered K.D. not to touch the phone. She complied. Tarnow apologized for having squeezed her. K.D. replied, "Let's forget about it[,]" explaining to the jury that she "just wanted to get out of there." Tarnow would not allow K.D. to go to work, saying, "[L]et's start the morning right." At Tarnow's request, K.D. removed her jeans and shirt. Tarnow then ripped off her bra and underwear, climbed on top of her, and engaged in vaginal intercourse. K.D. testified that although she did not want to have sex with Tarnow, she did what she was told, saying, "I was too scared to . . . I was scared of a repeat of what happened the night before."

Tarnow became jealous again, either during or after sex, and resumed questioning K.D. He grabbed a TV remote control and shoved it into K.D.'s vagina. He "just kept pushing and pushing it further and I screamed and told him to stop." K.D. bled as a result of the attack.

-3-

Tarnow then beat K.D., throwing her headfirst onto the tile floor, stomping, kicking, elbowing, and punching her. When she tried to stand up, Tarnow elbowed her in the neck until she dropped to the floor. He pinned her down and slammed her face onto the tile, causing her chin to split open and bleed.

At some point thereafter, Tarnow decided that they needed to go to the clinic to be tested for sexually transmitted diseases, as well as other communicable diseases. He had K.D. drive to a clinic in Bemidji, Minnesota, some 30 miles away from K.D.'s home. During the drive, Tarnow continued to accuse K.D. of being unfaithful. K.D. testified that Tarnow was "ranting and raving" and that she did what she was told. "I didn't want to continue to get hit anymore." At one point, Tarnow grabbed K.D.'s ponytail, took out a knife, and cut off a chunk of her hair. He then hit K.D. on the side of her face.

When they arrived at the clinic, two law enforcement officers were located in the lobby, guarding an inmate. While Tarnow was talking to clinic staff, K.D. stepped aside, pulled up her chin to show her wound, and mouthed the words "help me" to the officers. One of the officers called dispatch and requested that an officer be sent to investigate a possible domestic assault. Sergeant Ernest Beitel responded to the call and testified,

> [K.D.] was crying. She was disheveled. She was very shook up. She appeared very alarmed. She had injuries that were consistent with being assaulted. I saw lacerations, contusions, swelling, loose hair, bruising in other areas. . . . It took quite a while for me to get her to calm down in order to even talk to her about what happened. She was very concerned that I wasn't going to do anything, that I wasn't going to protect her or I wasn't going to arrest Mr. Tarnow.

A sexual assault nurse examiner evaluated K.D. and found lacerations in K.D.'s genital area. She also found bleeding and bruising on the uvula, the fleshy appendage

located in the back of the mouth. Bruises covered K.D.'s body, and she had suffered a cut on her chin. According to the nurse, the injuries were consistent with the physical and sexual abuse that K.D. had described.

Tarnow was charged with aggravated sexual abuse, and the case proceeded to trial. K.D. testified first, setting forth the events of January 30th and 31st. The officer who called dispatch, the officer who responded to the call, and the sexual assault nurse examiner also testified. The government introduced the torn undergarments, as well as pictures that depicted K.D.'s bedroom, the undergarments, and the TV remote control. An FBI agent, who had interviewed Tarnow while he was in custody, testified that Tarnow claimed that he had had consensual sex with K.D.

Over Tarnow's objection, the government called two women who testified about prior encounters with Tarnow. The first of these witnesses testified that she had met Tarnow at a party in 2007. After Tarnow expressed sexual interest in other women at the party, he expressed interest in the witness, who "kind of brushed him off." When the witness tried to leave the party, she discovered that her car tire had been slashed. Tarnow told her, "You're not going anywhere. I slashed your tire." He then dragged the witness by her hair into his truck and drove her to another house. Once there, Tarnow grabbed her by the ponytail and tried to cut it off. When the witness tried to leave the second house, Tarnow grabbed her, held her against the wall, and sliced her neck with scissors. The witness eventually escaped, running away from the house, with Tarnow in pursuit. After the witness tripped and broke her leg, Tarnow tried to pull her leg back into place and threatened to kill her if she told the police. The government also called Tarnow's former wife, who testified that during their marriage Tarnow had knocked her unconscious during a fight. At the close of the evidence, the district court instructed the jury that it could use the evidence of Tarnow's prior acts "only on the issue of intent and motive." Jury Instr. 7.

During the charge conference, defense counsel requested an instruction on simple assault, arguing that because the assault took place after the alleged sexual contact, Tarnow was entitled to a lesser included offense instruction. The district court denied the motion.

The instructions set forth Tarnow's theory of the case, that is:

> [T]hat he was invited to [K.D.'s] home and that he had reason to believe he was welcome to spend the night, that he did not knowingly cause [K.D.] to engage in a sexual act against her will, and that he did not engage in a sexual act with [K.D.] by the use of force.

Jury Instr. 18. The jury found Tarnow guilty of aggravated sexual abuse, and he was sentenced to 480 months' imprisonment.

## II. Discussion

### A. Sufficiency of the Evidence

Tarnow argues that the evidence is insufficient to sustain a conviction for aggravated sexual abuse. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict and accept all reasonable inferences that support the verdict. United States v. Anderson, 570 F.3d 1025, 1029 (8th Cir. 2009). We will reverse only if no reasonable jury could have found Tarnow guilty beyond a reasonable doubt. Id. Because Tarnow did not move for judgment of acquittal, we review the district court's entry of judgment for plain error. Id.

To convict a defendant of aggravated sexual abuse under 18 U.S.C. §§ 2241(a)(1) and 1153, the government must prove beyond a reasonable doubt that "(1) the defendant did knowingly cause and attempt to cause another to engage in a sexual act, (2) by the use of force or threat of force, (3) the defendant is an Indian, and

(4) the offense occurred in Indian Country." <u>United States v. Youngman</u>, 481 F.3d 1015, 1020 (8th Cir. 2007). Tarnow stipulated that he is an Indian and that the events occurred on Indian land. Accordingly, Tarnow disputed only that he had knowingly caused K.D. to engage in a sexual act and that he had done so by the use of force or the threatened use of force.

Tarnow argues that K.D. exaggerated the facts and that she "practically abducted [him] for sex that night." Appellant's Br. 8. He concedes that he assaulted K.D., but argues that the jury should have distinguished the nonconsensual acts of assault from the consensual sexual acts. He points to evidence of their conversation via text messages, during which they discussed rekindling their relationship, either short or long term.

Tarnow's argument sets forth his theory of the case, but it does not undermine the evidence in support of his conviction. A reasonable jury could find that Tarnow used the threat of force and actual force to cause K.D. to engage in sexual acts. The evidence showed that the physical and sexual abuse occurred either simultaneously or very close in time, with the victim fearing further physical abuse if she did not submit to Tarnow's demands. As recounted above, K.D. testified that she engaged in oral and vaginal sex only because she "didn't want the terrorizing to continue." Physical and photographic evidence corroborated K.D.'s testimony that Tarnow had ripped her undergarments from her body. The jury heard the nurse's testimony that the lacerations on K.D.'s genitals and the bruising on her uvula were consistent with the sexual abuse K.D. had described. The nurse characterized the injury to K.D.'s uvula as "very unusual" and caused by something being forced into K.D.'s mouth. A reasonable jury could find that Tarnow's act of forcibly inserting a TV remote control unit into K.D.'s vagina satisfied the disputed elements of aggravated sexual abuse. A photograph showed the remote control, and another showed drops of blood on K.D.'s sheets. The nurse's and Sergeant Beitel's testimony regarding the other

injuries to K.D.'s body corroborated K.D.'s description of the beatings she had suffered at Tarnow's hands.

Tarnow acknowledges that his challenge to the sufficiency of the evidence "is relegated to an attack on the testimony of [the victim]." Appellant's Br. 8. In reviewing the sufficiency of the evidence, however, we do not review the credibility of the witnesses. "It is the function of the jury, not an appellate court, to . . . judge the credibility of witnesses. Such credibility findings are virtually unreviewable on appeal." United States v. Mann, 701 F.3d 274, 298 (8th Cir. 2012) (internal quotations and citations omitted). Suffice it to say that, as described in detail above, the evidence presented at trial was sufficient to sustain Tarnow's conviction.

## B. Evidentiary Challenge

Tarnow argues that the district court erred in allowing the testimony regarding Tarnow's prior bad acts. He contends that the evidence was not probative and that even if it was, it was too prejudicial to be admitted. We review evidentiary rulings for abuse of discretion. United States v. Brumfield, 686 F.3d 960, 962 (8th Cir. 2012).

Federal Rule of Evidence 404(b) "prohibits the admission of evidence of a defendant's prior bad acts to prove character or propensity to commit crime, but it permits such evidence for other purposes," such as to prove intent and motive. Brumfield, 686 F.3d at 963. To be admissible, the evidence must be "probative of a material issue other than character" and "similar in kind and reasonably close in time to the crime charged." Id. (citations omitted). Moreover, "[t]he prosecution must present sufficient evidence from which a jury could find by a preponderance of the evidence that the prior act occurred." Id. A district court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

Tarnow placed his state of mind at issue when he denied "knowingly caus[ing] [K.D.] to engage in a sexual act against her will" and "by the use of force." Jury Instr. 18. The first witness's testimony was relevant to show that Tarnow intended to use force or the threat of force to subdue and control K.D. The intent was exemplified by Tarnow's dragging the witness by her hair to his truck and driving her to a second location against her will after she had declined his advances. Tarnow then used force to subdue the witness when she defied him by trying to leave the second residence and then chased her when she finally escaped. The evidence thus was probative of Tarnow's intent and motive, and it met the remaining requirements under Rule 404(b). Any prejudicial effect was lessened by the court's instruction to the jury to consider the evidence "only on the issue of intent and motive." Jury Instr. 7. See Brumfield, 686 F.3d at 963. Accordingly, we conclude that the district court did not abuse its discretion in admitting the first witness's testimony.

Whether the testimony of Tarnow's former wife should have been admitted presents a closer question. Any error in its admission, however, was harmless, in light of the overwhelming evidence against Tarnow and the limiting instruction given to the jury. See United States v. Crenshaw, 359 F.3d 977, 1003-04 (8th Cir. 2004) ("An evidentiary error is harmless if, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict.") (internal quotations and citation omitted).

## C. Jury Instruction

Tarnow argues that he was entitled to an instruction on the offense of simple assault. "[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." United States v. Ponce, No. 11-2671, 2013 WL 173967, at *3 (8th Cir. Jan. 17, 2013) (quoting Keeble v. United States, 412 U.S. 205, 208

(1973)); see also United States v. Crawford, 413 F.3d 873, 876 (8th Cir. 2005) (per curiam). We review for abuse of discretion the refusal to give an instruction on the lesser included offense. Id.

We conclude that the evidence would not permit a rational jury to find Tarnow guilty of simple assault while simultaneously acquitting him of aggravated sexual assault. Tarnow continues to argue that the physical assault was separate from the sexual acts, which he contends were consensual. He cites evidence of K.D.'s text messages and her testimony that she brought him to her rural home. K.D.'s account of the events of January 30th and 31st was not contradicted, however, and was corroborated by physical and photographic evidence, as well as by the testimony of the nurse and law enforcement officers. Whatever the nature of the parties' relationship may have been upon their arrival at K.D.'s home, it soon turned violent, with Tarnow using force or the threat of force to cause K.D. to submit to oral and vaginal sex, force that included the insertion of a physical object into K.D.'s body. As the government stated during closing arguments, the events giving rise to the charge against Tarnow should be viewed as a whole, rather than as individual frames of a movie. Indeed, rather than depicting a series of discrete events—episodes of consensual sex punctuated by period of violence and threats thereof—the evidence, viewed as a montage, established for a rational jury only a continuity of violence and force, giving the lie to Tarnow's argument to the contrary. The district court thus did not abuse its discretion by denying Tarnow's request for a lesser included offense instruction.

III. Conclusion

The conviction is affirmed.

_____